BENJAMIN B. WAGNER
United States Attorney
LAUREL D. WHITE
Assistant U.S. Attorney
MI YUNG PARK
Trial Attorney
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR. S-07-0290-WBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELDEN RAY CIBART, | ) | Date: January 20, 2010 |
| | ) | Time: 9:00 a.m. |
| Defendant. | ) | Court: Hon. William B. Shubb |
| | ) | |
| | ) | |

**TRIAL BRIEF**

1                         TABLE OF CONTENTS

2                                                              PAGE

3   TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . .  iv

4   I.   STATUS OF THE CASE  . . . . . . . . . . . . . . . . . . .  1

5   II.  THE CHARGES . . . . . . . . . . . . . . . . . . . . . . .  3

6   III. ELEMENTS OF THE OFFENSE  . . . . . . . . . . . . . . . . .  4

7        Count One . . . . . . . . . . . . . . . . . . . . . . . .  4

8        Counts Two, Three, Four and Five  . . . . . . . . . . . .  5

9        Definitions . . . . . . . . . . . . . . . . . . . . . . .  6

10       Deleted or "Cached" Files . . . . . . . . . . . . . . . . 11

11       Proving the Age of the Persons Depicted . . . . . . . . . 13

12       Proving Real Children . . . . . . . . . . . . . . . . . . 14

13       Forfeiture Allegation . . . . . . . . . . . . . . . . . . 16

14  IV.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . 17

15       Defendant's Statement . . . . . . . . . . . . . . . . . . 19

16       Forensic Examinations . . . . . . . . . . . . . . . . . . 20

17       The Seagate Hard Drive  . . . . . . . . . . . . . . . . . 22

18       The Maxtor Hard Drive . . . . . . . . . . . . . . . . . . 28

19       Floppy Disk Analysis  . . . . . . . . . . . . . . . . . . 28

20  V.   GOVERNMENT'S CASE-IN-CHIEF  . . . . . . . . . . . . . . . . 30

21       A.   Witnesses . . . . . . . . . . . . . . . . . . . . . . 30

22            Trial Stipulations  . . . . . . . . . . . . . . . . . 33

23       B.   Count One - Possession on January 18, 2006  . . . . . 34

24            1.   Jurisdiction . . . . . . . . . . . . . . . . . . 34

25            2.   The Images to Prove Possession . . . . . . . . . 36

26       C.   Count Two - Receipt on October 9, 2005  . . . . . . . 39

27            1.   Jurisdiction for Receipt in Counts Two-Five  . . 39

28

                                   i

2.   Count Two - Images to Prove Receipt on or about October 9, 2005 . . . . . . . . . . . . . . .   40

D.   Count Three - Receipt on January 7, 2006 . . . . .   40

1.   Jurisdiction for Count Three . . . . . . . .   40

2.   Video to Prove Receipt on or about January 7, 2006 . . . . . . . . . . . . . .   41

E.   Count Four - Receipt on January 9, 2006 . . . . . .   41

1.   Jurisdiction for Count Four . . . . . . . .   41

2.   Video to Prove Receipt on January 9, 2006 . .   42

F.   Count Five, Receipt on Janurary 16, 2006 . . . . .   42

1.   Jurisdiction for Count Five . . . . . . . .   42

2.   Videos to Prove Receipt on January 16, 2006 .   43

VI.  EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . .   44

A.   Computer Files In General . . . . . . . . . . . . .   44

     Records Custodians . . . . . . . . . . . . . . .   45

     Images and Videos of Child Pornography . . . . . .   46

B.   Computer Evidence and Images . . . . . . . . . . .   48

1.   The Admissibility of the Images of Child Pornography Possessed and Received by the Defendant . . . . . . . . . . . . . . . . .   48

2.   Evidence of Child Erotica Should be Admitted .   52

3.   Admissibility of the Defendant's Internet History and Bookmarks . . . . . . . . . . . .   56

C.   Defendant's Defense/Motions in Limine . . . . . . .   57

D.   Other 404(b) Evidence . . . . . . . . . . . . . . .   57

E.   Chain of Custody . . . . . . . . . . . . . . . . .   59

F.   Judicial Notice . . . . . . . . . . . . . . . . . .   63

G.   Demonstrative Exhibits . . . . . . . . . . . . . .   64

H.   Defendant's Statements . . . . . . . . . . . . . .   66

I.   Prior Inconsistent Statements . . . . . . . . . . .   67

J.   Cross-Examination of Defendant's Character
     Witnesses . . . . . . . . . . . . . . . . . . . . . . .   67

K.   Expert Testimony  . . . . . . . . . . . . . . . .   67

L.   Reciprocal Discovery  . . . . . . . . . . . . . .   69

M.   Courtroom Security  . . . . . . . . . . . . . . .   69

N.   Presentation of Witnesses . . . . . . . . . . . .   69

O.   Forfeiture Allegation . . . . . . . . . . . . . .   69

VII.   WITNESS EXCLUSION & CASE AGENT DESIGNATION  . . . . . .   71

VIII. GOVERNMENT WITNESSES  . . . . . . . . . . . . . . . . .   71

IX.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .   72

1

TABLE OF AUTHORITIES

2
PAGE

3
FEDERAL CASES

4
Free Speech Coalition et al. v. Ashcroft,
        535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . 14

5

6
Huddleston v. United States,
        485 U.S. 681 (1988) . . . . . . . . . . . . . . . . . . 53

7
Johnson v. United States,
        325 F.2d 709 (1st Cir. 1963) . . . . . . . . . . . . . 46

8

9
Libretti v. United States,
        516 U.S. 29 (1995) . . . . . . . . . . . . . . . . . . 70

10
Michelson v. United States,
        335 U.S. 469 (1948) . . . . . . . . . . . . . . . . . . 67

11

12
Saks Intern, Inc. v. M/V Export Champion,
        817 F.2d 1011 (2nd Cir. 1987) . . . . . . . . . . . . . 46

13
United Stated v. Kinsey,
        843 F.2d 383 (9th Cir. 1988) . . . . . . . . . . . . . 68

14

15
United States v. Anderson,
        813 F.2d 1450 (9th Cir. 1987) . . . . . . . . . . . . . 68

16
United States v. Anderton,
        136 F.3d 747 (11th Cir. 1998) . . . . . . . . . . . . . 13

17

18
United States v. Banks,
        556 F.3d 967 (9th Cir. 2009) . . . . . . . . . . . . . . 8

19
United States v. Bradshaw,
        690 F.2d 704 (9th Cir. 1982) . . . . . . . . . . . . . 54

20

21
United States v. Brand,
        467 F.3d 179 (2nd Cir. 2006) . . . . . . . . . . . 55, 58

22
United States v. Briscoe,
        896 F.2d 1476 (7th Cir. 1990) . . . . . . . . . . . . . 45

23

24
United States v. Byrd,
        31 F.3d 1329 (5th Cir. 1994) . . . . . . . . . . . . . 58

25
United States v. Carroll,
        105 F.3d 740 (1st Cir. 1997) . . . . . . . . . . . . . 10

26

27
United States v. Catabran,
        836 F.2d 453 (9th Cir. 1988) . . . . . . . . . . . . . 46

28

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993) . . . . . . . . . . . . . . 46

United States v. Connors,
    894 F.2d 987 (8th Cir. 1990) . . . . . . . . . . . . . 71

United States v. Curtin,
    489 F.3d 935 (9th Cir. 2007) . . . . . . . . . . . . . 54

United States v. Deaton,
    328 F.3d 454 (8th Cir. 2003) . . . . . . . . . . . . . 15

United States v. Dhingra,
    371 F.3d 557 (9th Cir. 2004) . . . . . . . . . . . 54, 57

United States v. Doe,
    960 F.2d 221 (1st Cir. 1992) . . . . . . . . . . . . . 46

United States v. Dost,
    636 F. Supp. 828 (S.D. Cal., 1986) . . . . . . . . . 8, 9

United States v. Duncan,
    919 F.2d 981 (5th Cir. 1990) . . . . . . . . . . . . . 65

United States v. Espinoza,
    827 F.2d 604 (9th Cir. 1987) . . . . . . . . . . . . . 68

United States v. Farrelly,
    389 F.3d 649 (6th Cir. 2004) . . . . . . . . . . . . . 15

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) . . . . . . . . . . . . . 66

United States v. Garcia-Guizar,
    160 F.3d 511 (9th Cir. 1998) . . . . . . . . . . . . . 70

United States v. Gendron,
    18 F.3d 955 (1st Cir. 1994) . . . . . . . . . . . . . . 9

United States v. Godoy,
    528 F.2d 281 (9th Cir. 1975) . . . . . . . . . . . . . 63

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) . . . . . . . . . . . 59, 63

United States v. Hays,
    231 F.3d 930 (9th Cir. 2000) . . . . . . . . . . . . . 50

United States v. Hill,
    459 F.3d 966 (9th Cir. 2006) . . . . . . . . . . . . . . 8

United States v. Hudson,
    479 F.2d 251 (9th Cir. 1972) . . . . . . . . . . . . . 46

v

United States v. King,
        200 F.3d 1207 (9th Cir. 1999) . . . . . . . . . . . . . 53

United States v. Knox,
        32 F.3d 733 (3rd Cir. 1994) . . . . . . . . . . . . . 8, 23

United States v. Lemire,
        720 F.2d 1327 (D.C. Cir. 1983) . . . . . . . . . . . . 65

United States v. Little,
        753 F.2d 1420 (9th Cir. 1985) . . . . . . . . . . . . 71

United States v. Marchand,
        308 F. Supp. 2d 498 (D.N.J., 2004) . . . . . . . . . 15, 16

United States v. Mayans,
        17 F.3d 1174 (9th Cir. 1994) . . . . . . . . . . . . 54

United States v. Meyers,
        847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . . . 65

United States v. Montgomery,
        384 F.3d 1050 (9th Cir. 2006) . . . . . . . . . . . . 53

United States v. Overton,
        573 F.3d 679 (9th Cir. 2009) . . . . . . . . . . . . . 8

United States v. Pitman,
        475 F.2d 1335 (9th Cir. 1973) . . . . . . . . . . . . 45

United States v. Pollack,
        417 F.2d 240 (5th Cir. 1969) . . . . . . . . . . . . 65

United States v. Rayl,
        270 F.3d 709 (8th Cir. 2001) . . . . . . . . . . . . 13

United States v. Rearden,
        349 F.3d 608 (9th Cir. 2003) . . . . . . . . . . . . 7, 50

United States v. Robinson,
        137 F.3d 652 (1st Cir. 1998) . . . . . . . . . . . . . 9

United States v. Robinson,
        967 F.2d 287 (9th Cir. 1992) . . . . . . . . . . . . 63

United States v. Roderick,
        62 M.J. 425 (C.A.A.F. 2006) . . . . . . . . . . . . 23

United States v. Romm,
        455 F.3d 990 (9th Cir. 2006) . . . . . . . . . . 11, 12

United States v. Runyan,
        290 F.3d 223 (5th Cir. 2002) . . . . . . . . . . . . . 9

vi

United States v. Salcido,
    506 F.3d 729 (9th Cir. 2007) . . . . . . . . . .   14, 15, 51

United States v. Salgado,
    250 F.3d 438 (6th Cir. 2001) . . . . . . . . . . . . . .   44

United States v. Scales,
    594 F.2d 558 (6th Cir. 1979) . . . . . . . . . . . . . .   65

United States v. Seschillie,
    310 F.3d 1208 (9th Cir. 2002) . . . . . . . . . . . . .   71

United States v. Shirley,
    884  F.2d 1130 (9th Cir. 1989) . . . . . . . . . . . . .   64

United States v. Simpson,
    152 F.3d 1241 (10th Cir. 1998) . . . . . . . . . . . . .   11

United States v. Soliman,
    813 F.2d 277 (9th Cir. 1987) . . . . . . . . . . . . . .   53

United States v. Stanley,
    896 F.2d 450 (10th Cir. 1990) . . . . . . . . . . . . .   14

United States v. Stephens,
    779 F.2d at 239 (5th Cir. 1985) . . . . . . . . . . . .   65

United States v. Tucker,
    305 F.3d 1193 (10th Cir. 2002) . . . . . . . . . . .   10, 12

United States v. Vansant,
    423 F.2d 620 (9th Cir. 1970) . . . . . . . . . . . . . .   59

United States v. Vela,
    673 F.2d 86 (9th Cir. 1982) . . . . . . . . . . . . . .   44

United States v. Villard,
    700 F. Supp. 803 (D.N.J., 1988) . . . . . . . . . . . .   13

United States v. Vizcarra-Martinez,
    66 F.3d 1006 (9th Cir.1995) . . . . . . . . . . . . . .   53

United States v. Whitaker,
    127 F.3d 595 (7th Cir. 1997) . . . . . . . . . . . . . .   44

United States v. Wiegand,
    812 F.2d 1239 (9th Cir. 1987) . . . . . . . . . . . . . .   8

United States v. Williams,
    291 F.3d 1180 (9th Cir. 2002) . . . . . . . . . . . . .   52

United States v. X-Citement Video, Inc.,
    513 U.S. 64 (1994) . . . . . . . . . . . . . . . . .   10, 14

vii

FEDERAL STATUTES

18 U.S.C. §§ 1030(e)(1) and 2256(6) . . . . . . . . . . . . . . . 6

18 U.S.C. § 2256(1) . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2256(2)(A) . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2256(5) . . . . . . . . . . . . . . . . . . . . . . . 6

FEDERAL RULES OF CRIMINAL PROCEDURE

Fed. R. Crim. P. 23(a) . . . . . . . . . . . . . . . . . . . . . 71

Fed. R. Crim. P. 32.2(b) . . . . . . . . . . . . . . . . . . . . 70

Fed. R. Crim. P. 32.2(b)(1) . . . . . . . . . . . . . . . . . . . 70

FEDERAL RULES OF EVIDENCE

Fed. R.Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . 54

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . 54

Fed. R. Evid. 405(a) . . . . . . . . . . . . . . . . . . . . . . 67

Fed. R. Evid. 615 . . . . . . . . . . . . . . . . . . . . . . . 71

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . 68

Fed. R. Evid. 801(d)(2)(A) . . . . . . . . . . . . . . . . . . . 66

Fed. R. Evid. 901(a) . . . . . . . . . . . . . . . . . . . . . . 59

BENJAMIN B. WAGNER
United States Attorney
LAUREL D. WHITE
Assistant U.S. Attorney
MI YUNG PARK
Trial Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. CR. S-07-0290-WBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S TRIAL BRIEF** |
| | ) | |
| ELDEN RAY CIBART, | ) | |
| | ) | Date: January 20, 2010 |
| Defendant. | ) | Time: 9:00 a.m. |
| | ) | Court: Hon. William B. Shubb |
| _____ | ) | |

TO:  THIS HONORABLE COURT, DEFENDANT, AND HIS ATTORNEY OF
     RECORD:

## I.  STATUS OF THE CASE

The trial is set for January 20, 2010, at 9:00 a.m., before the Honorable Judge William B. Shubb, Senior United States District Court Judge.  The estimated length of the trial is 5-6 court days.[1]  The government has subpoenaed 16 witnesses, but may

---

[1] At the January 4, 2010 trial confirmation hearing, government counsel informed the Court it expected the trial to take four to five days, with the government's case taking about three days.  This estimate was based on trial stipulations entered into with the defense on December 18, 2009.  One of those

**Government's Trial Brief  1-20-10**     1

1  not call all of them to testify during its case in chief.  The

2  defendant has waived jury trial and opted for a court trial.  The

3  government has joined in the jury trial waiver.  The defendant is

4  not in custody.

5      The defendant is charged in a 5-count Superceding Indictment

6  with one count of possessing matter containing visual depictions

7  of minors engaged in sexually explicit conduct, on or about

8  January 18, 2006; and four counts of receiving visual depictions

9  of minors engaged in sexually explicit conduct, on or about

10  October 9, 2005, and January 7, 9, and 16, 2006.  The Superseding

11  Indictment also seeks the forfeiture of the computer, hard drives

12  and floppy disks used in furtherance of the enumerated offenses.

13  The indictment alleges that all of this conduct occurred in

14  Shasta County, State and Eastern District of California.  The

15  original Indictment was filed on June 28, 2007.  The Superceding

16  Indictment was filed on July 23, 2009.

17      This trial brief sets forth:  the charge; the elements of

18  the offenses; the factual background; the relevant evidence the

19  government expects to offer during its case-in-chief; several

20  evidentiary issues, and a list of the government's expected

21  witnesses.

22  ///

23

---

24  stipulations pertained to the chain of custody of the computer

25  hard drives and forensic copies of the hard drives.  On January
   6, counsel for the defense informed the government it was

26  withdrawing its stipulation to the chain of custody of the
   computer items.  In determining the number of persons and

27  testimony necessary to properly authenticate the computer media
   the government intends to offer at trial,  the government

28  estimates it may consume an additional half day of court time.

**Government's Trial Brief  1-20-10**     2

## II. **THE CHARGES**

The Superceding Indictment alleges in Count One that on or about January 18, 2006, in the County of Shasta, State and Eastern District of California, the defendant did knowingly possess matter, to wit: at least one computer hard drive and computer disks, each of which contained a visual depiction which was produced using materials which had been mailed, shipped, and transported in interstate and foreign commerce, and which visual depiction was transported and shipped in interstate commerce, by any means including by computer, and the production of which visual depiction involved the use of a minor engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256, and which visual depiction was of such conduct, all in violation of Title 18 united States Code, Section 2252(a)(4)(B).

Counts Two, Three, Four, and Five each allege that on or about October 9, 2005, January 7, 2006, January 9, 2006, and January 16, 2006 respectively, the defendant did knowingly receive visual depictions that had been mailed, shipped, and transported in interstate and foreign commerce, and which contained materials which had been so mailed, shipped, and transported, by any means including by computer, and which as the defendant then knew, the production of said visual depiction involved the use of a minor engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256, and the visual depiction was of such conduct, in violation of Title 18 United States Code, Section 2252(a)(2).

Count Two does not describe the visual depictions the

1 defendant received on October 9, 2005, but the government is

2 prepared to offer approximately 6 still images depicting minor

3 boys, received on or about October 9, 2005.  In Count Three, the

4 Indictment alleges that on January 7, 2006, the defendant

5 knowingly received a video file entitled "bibcam 12yo Caddy_super

6 cute boy jerks.avi".  In Count Four, the Indictment alleges that

7 on January 9, 2006, the defendant received a video file entitled

8 "Bibcam - Cool Shows.mpg", and in Count Five, the Indictment

9 alleges that on January 16, 2006, the defendant received several

10 video files entitled "1.mpg", "Bibcam Asian 13 Yo.mpg", "11yr

11 blonde boy fuck.wmv", and "(Pthc)[Boy](Webcam) Haduri - Korean 12

12 yo(Perfect Cum).asf".

13      The Indictment also contains notice of the government's

14 intent to seek forfeiture of the listed computer equipment which

15 is alleged to have been used by the defendant in furtherance of

16 the charged offenses.

17 **III. <u>ELEMENTS OF THE OFFENSE</u>**

18 <u>**Count One**</u>

19      In order for the defendant to be found guilty of 18 U.S.C. §

20 2252(a)(4)(B) as alleged in Count One, the government must prove

21 each of the following elements beyond a reasonable doubt:

22     First:    That on or about January 18, 2006 in Shasta

23     County, State and Eastern District of California,

24     the defendant knowingly possessed matter (a

25     computer hard drive and computer disks) which the

26     defendant knew contained visual depictions of

27     minors engaged in sexually explicit conduct;

28     Second:  that the production of the visual depictions

contained on the hard drive and on the computer disks involved a minor engaged in sexually explicit conduct and each of the visual depictions was of such conduct;

Third:      that the defendant knew that the production of the visual depictions involved the use of a minor engaging in sexually explicit conduct; and

Fourth:     That the visual depiction had been either: (1) mailed, shipped, or transported in interstate or foreign commerce, by computer or other means, or (2) produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce, by computer or other means.

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.   9th Cir. Model Jury Inst. 3.18.

**Counts Two, Three, Four and Five**

In order for the defendant to be found guilty of 18 U.S.C. § 2252(a)(2) as alleged in Counts Two, Three, Four and Five of the Superseding Indictment, the government would be required to prove each of the following elements beyond a reasonable doubt as to each charge:

First:      That the defendant knowingly received a visual depiction;

Second:     that such visual depiction was shipped or transported in interstate or foreign commerce by any means including computer;

1     Third:    that the production of such visual depiction

2                involved the use of a minor engaging in sexually

3                explicit conduct;

4     Fourth:    that such visual depiction is of a minor engaged

5                in sexually explicit conduct; and

6     Fifth:    that the defendant knew that at least one of the

7                performers in such visual depiction was a minor

8                and that the visual depiction was of such minor

9                engaged in sexually explicit conduct.

### Definitions

Many of the terms used in the two relevant statutes above are statutorily defined:

**Computer** means an electronic magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter, or portable hand held calculator, or other similar device.  18 U.S.C. §§ 1030(e)(1) and 2256(6).

A **visual depiction** includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5)

A **minor** is any person under the age of 18 years.  18 U.S.C. § 2256(1).

1   **Sexually explicit conduct** means actual or simulated (i)

2   sexual intercourse including genital-genital, oral-genital, anal-

3   genital, or oral-anal, whether between persons of the same or

4   opposite sex, (ii) bestiality, (iii) masturbation, (iv) sadistic

5   or masochistic abuse, or (v) lascivious exhibition of the

6   genitals or pubic area of any person.  18 U.S.C. § 2256(2)(A).

7   **Sadistic abuse** means sexual conduct that involves pain to

8   the minor child involved.  Sadism involves a form of

9   satisfaction, commonly sexual, derived from inflicting harm on

10  another.  United States v. Rearden, 349 F.3d 608, 615 (9th Cir.

11  2003)(quoting, in part, Black's Law Dictionary 1198 (1979)).

12  **Lascivious Exhibition**

13  Some of the images the government intends to offer are of

14  the lascivious nature.  In determining whether a depiction

15  includes lascivious exhibition of the genitals or pubic area of

16  any person, the fact finder may consider any of the following

17  factors:

18  (1) Whether the focal point of the depiction is the child's

19  genitals or pubic area;

20  (2) Whether the setting of the depiction is sexually

21  suggestive, for instance, the setting is in a place or pose

22  generally associated with sexual activity;

23  (3) Whether the child is depicted in an unnatural pose or in

24  inappropriate attire, considering the age of the child;

25  (4) Whether the child is fully, or partially clothed or is

26  nude;

27  (5) Whether the depiction suggests sexual coyness or a

28  willingness to engage in sexual activity;

Government's Trial Brief  1-20-10     7

1    (6) Whether the depiction is intended or designed to elicit

2  a sexual response from the viewer;

3    (7) Whether the picture portrays the child as a sexual

4  object; and

5    (8) The captions on the pictures.

6    Whether a depiction is lascivious should be viewed from the

7  perspective of the photographer, not from the perspective of the

8  minor being photographed.  See United States v. Dost, 636 F.Supp.

9  828 (S.D. Cal., 1986)[2]; and United States v. Banks, 556 F.3d 967,

10 980 (9th Cir. 2009).

11   An exhibition of the genitals or pubic area may encompass a

12 visual depiction of a child's genital or pubic area even where

13 those areas are covered by clothing.  United States v. Knox, 32

14 F.3d 733 (3rd Cir. 1994); See also  United States v. Wiegand, 812

15 F.2d 1239 (9th Cir. 1987)[3]; Dost, 636 F.Supp. at 828;.

16

17   [2]The Dost factors are six considerations that judges may use
    as "a starting point . . . in determining whether a particular
18 image is likely [to be lascivious]."  United States v. Hill, 459
    F.3d 966, 972 (9th Cir. 2006).  The Dost factors are neither
19 exclusive nor conclusive, but operate as merely "a starting
    point" for determining whether a particular image is so presented
20 by the photographer as to arouse or satisfy the sexual cravings
    of a voyeur."  Id. at 971.  Dost itself encourages consideration
21 of any other factors that may be relevant in a particular case.
    See United States v. Overton,573 F.3d 679 (9th Cir. 2009), citing
22 Dost, 636 F.Supp. at 832.

23

24   [3]In Wiegand, the court seemed to apply much the same
    standard announced by the Dost court, that lasciviousness is not
25 a characteristic of the child photographed but of the exhibition
    which the photographer sets up for a audience that consists of
26 himself or like-minded pedophiles.  The picture of a child
    "engaged in sexually explicit conduct within the meaning of 18
27 U.S.C. § 2252, is a picture of a child's sex organs displayed
    lasciviously, that is, so presented by the photographer as to
28 arouse or satisfy the sexual cravings of a voyeur.  Wiegand at

**Interstate or Foreign Commerce**: Each count of the Superseding Indictment includes an interstate or foreign commerce element.

In Count One, the government must show that the defendant possessed a visual depiction (or depictions) that had been mailed, shipped or transported in interstate or foreign commerce, or that any matter used to possess the image(s) traveled in interstate or foreign commerce.

In Counts Two through Five, the government must show that the defendant knowingly received a visual depiction that had been shipped or transported in interstate or foreign commerce.

The government, however, need not prove the defendant's state of mind in respect to the "jurisdictional facts" such as the interstate nature of a transmission. United States v. Gendron, 18 F.3d 955 (1st Cir. 1994); United States v. Robinson, 137 F.3d 652 (1st Cir. 1998).

Each of the subsections of 18 U.S.C. § 2252 charged in this case make it clear that travel can be accomplished by any means, "including by computer." As such, travel by means of a computer via the internet satisfies the interstate or foreign commerce element. See United States v. Runyan, 290 F.3d 223, 239 & n. 11 (5th Cir. 2002)(adopting United States v. Carroll, 105 F.3d 740 (1st Cir. 1997) and observing that "a number of other circuits have agreed that transmission of material via the Internet constitutes transportation in interstate commerce in related

---

1244.

contexts"); <u>United States v. Carroll</u>, 105 F.3d 740, 742 (1st Cir. 1997)(holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce.")

**<u>Mens Rea - Knowledge</u>**

All of the substantive counts of the indictment incorporate knowledge requirements.  In other words, the government must prove that the defendant knowingly received visual depictions, and possessed material containing visual depictions, that the defendant knew depicted sexually explicit conduct, and that the defendant knew at least one of the persons engaged in the sexually explicit conduct was a minor.  <u>See</u> Ninth Circuit Model Criminal Jury Instructions §§ 8.153, 8.154; <u>see also</u> <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 78 (1994).  The Ninth Circuit Manual of Model Criminal Jury Instructions provides further guidance as to what is required for a showing of knowledge:

> An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.  The government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

<u>See</u> Ninth Circuit Model Criminal Jury Instructions § 5.6.

Courts have provided further explanation as to what constitutes knowing possession of computer files in particular. In <u>United States v. Tucker</u>, 305 F.3d 1193, 1204-05 (10th Cir. 2002), <u>cert</u>. <u>denied</u>, 123 S. Ct. 1335 (2003), the court explained that the images which were automatically cached to the

defendant's hard drive, where he routinely deleted them after internet sessions, and the defendant's admission that he knew that the images would be stored on the hard drive, demonstrated the defendant's knowing possession of child pornography, and affirmed his conviction.   See also United States v. Romm, 455 F.3d 990, 998 (9th Cir. 2006), holding that evidence that defendant exercised dominion and control over images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them, was sufficient to show he possessed and received the images of child pornography.[4]   Finally, in United States v. Simpson, 152 F.3d 1241 (10th Cir. 1998) the court found sufficient proof defendant possessed child pornography where the government presented evidence that defendant's computer contained two child pornography files, the names of which were substantially similar to the names of files downloaded by the defendant over the Internet, although the specific files listed in the indictment had apparently been deleted.   The fact that defendant deletes or destroys evidence does not eliminate his culpability for engaging in the conduct related to that evidence.

**Deleted or "Cached" Files**

    In this case, one of the videos the government alleges the defendant received was placed in the defendant's Recycle folder on his Seagate hard drive.   Placement of a file in the Recycle

_____

[4] The court reasoned that while the images were displayed on Romm's screen and simultaneously stored to his laptop's hard drive, he had the ability to copy, print, or email the images to others.

**Government's Trial Brief  1-20-10**      11

folder, however, does not automatically mean the defendant
permanently deleted the image or sought to remove the file from
his hard drive.   In order to permanently delete a file from that
folder, the computer user must initiate a second delete command.
Once this is accomplished, the file may still be available on the
computer, but typically it is not accessible to the computer user
unless he makes use of specialized software to find the image.

By placing the file in the Recycle folder, the computer user
may access the folder and restore images or videos he wishes to
view.   In this case, evidence will reveal the defendant had a
working knowledge of the Recycle folder and was seen selectively
deleting files from the Recycle folder.

As the <u>Romm</u> Court instructed, in the electronic context, a
person can receive and possess child pornography without
downloading it, if he or she seeks it out and exercises dominion
and control over it.  <u>Romm</u>, 455 F.3d at 998, citing <u>United States</u>
<u>v. Tucker</u>, 305 F.3d 1193, 1204 (10th Cir. 2002), <u>cert</u>. <u>denied</u>,
537 U.S. 1223, (2003).   Even if images were seemingly deleted and
located in cache, if they were "capable of conversion into a
viewable form," such images could be used to sustain a conviction
of receipt and possession of child pornography if there is
evidence that the defendant exercised some control over the
images.  <u>Romm</u> at 998.

In the case of the one video identified in Count Five,
"1.mpg", the evidence will reveal that it was placed in the
Recycle folder, but not until the day after it was received and
viewed.   Where the evidence will reveal that Cibart sought out
images of boys on the internet by accessing newgroups and

1  websites known to feature child pornography, the government

2  asserts that when he received "1.mpg" on January 16, 2006, he

3  knowingly received a video depicting a minor engaged in sexually

4  explicit conduct, irrespective of whether the video file was

5  placed in the Recycle folder after its receipt.

6        **Proving the Age of the Persons Depicted**

7        While the government must prove the person depicted in the

8  sexually explicit image is a minor, the government may establish

9  such proof several ways.  In <u>United States v. Villard</u>, 700 F.

10 Supp. 803 (D.N.J., 1988), <u>aff'd</u>, 885 F.2d 117(3rd Cir. 1989), the

11 court summarized the various ways the government can prove the

12 age of a person depicted in an image:

13        First, the individual himself, or someone who has knowledge
          of his age, can testify as to the individual's age at the
14        time the photograph was taken.  Second, an expert, such as a
          pediatrician can analyze the photograph and give an expert
15        opinion as to the age of the individual[5]... Third, the jury
          can examine the photographs in question and determine for
16        itself whether the individual is under eighteen years of
          age.

17

18        The government may also tender certified copies of a birth

19 certificate of the minor whose depiction is identified by the law

20 enforcement officer who had first hand knowledge of the minor's

21 sexual abuse.

22        Finally, testimony by an agent as to the age of a child has

23 been found admissible under FRE 701 - lay opinion testimony

24 ───────────────

25        [5] <u>See</u> <u>United</u> <u>States v. Rayl</u>, 270 F.3d 709 (8th Cir.
26 2001)(Testimony of an experienced pediatrician as an expert as to
   the age of the children is permitted); and <u>United States v.</u>
27 <u>Anderton</u>, 136 F.3d 747 (11th Cir. 1998)(Medical doctor's opinion
   as to age of depicted children sufficient to allow jury to
28 receive the case).

**Government's Trial Brief  1-20-10**     13

limited to those opinions or inferences which are 1) rationally based on the perception of the witness; and 2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.  <u>United States v. Stanley</u>, 896 F.2d 450 (10th Cir. 1990).

### **Proving Real Children**

The government must also show that the images depicting minors engaged in sexually explicit conduct possessed and received by the defendant depicted real children.  <u>Free Speech Coalition et al. v. Ashcroft</u>, 535 U.S. 234 (2002)(holding that images generated entirely by computer, without the use of any actual minors, were protected by the First Amendment).  Thus, the possession of virtual images of minors engaged in sexually explicit conduct is not a crime under 18 U.S.C. § 2252(a).

The government must also prove beyond a reasonable doubt that the defendant knew the images he possessed depicted real minors engaged in sexually explicit conduct.  <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64 (1994)(the term "knowingly" refers to the minority age of the persons depicted and the sexually explicit nature of the material).  <u>Id.</u>  Thus, <u>Free Speech Coalition</u> and <u>X-Citement Video</u>, read together, require the government to prove that the defendant knew the images he possessed depicted real children engaged in sexually explicit conduct.  <u>United States v. Salcido</u>, 506 F.3d 729, 733 (9th Cir. 2007).

While the government must prove the minors are real children, the government need not present evidence other than the images themselves to prove the individuals depicted actual

children.[6]  United States v. Salcido, 506 F.3d 729 (9th cir.
2007), cert. denied, 128 S. Ct. 1918 (2008)(No expert needed to
prove the images depicted an actual minor).  See also United
States v. Deaton, 328 F.3d 454 (8th Cir. 2003)(Jury can decide
whether the children in pornography are real); and United States
v. Farrelly, 389 F.3d 649 (6th Cir. 2004)(Jury having access to
images can decide whether children depicted in images were real).

Further, evidence the defendant knew the children were real
may be proven through direct and/or circumstantial evidence of
actual knowledge and through finding of willful blindness.
United States v. Marchand, 308 F. Supp. 2d 498 (D.N.J., 2004).
Circumstantial evidence from which the knowledge element may be
inferred includes the appearance and number of the images proven
to depict real children.  Id. at 506.[7]  Where willful blindness

---

[6] In this case, however, the government intends to offer
evidence the children are real. Law enforcement officers involved
in the investigation of the production of images of the two known
minors whose images the defendant possessed, will testify.  As
for images depicting unknown victims, the government provided
those images to an FBI computer graphics expert and a forensic
pediatrician.  Upon analyzing the images of unknown victims, both
opined the children depicted were real.  Copies of their reports
and conclusions were provided to the defense.  Upon reviewing the
reports, the defense agreed to enter into a factual stipulation
that the children depicted were real. The government will call
the pediatrician to testify about the age of the unidentified
children in some of the images and videos.

[7] In Marchand, the court as the fact finder, considered the
details of each image, the staple that appeared in one of the
images, a file name that included the age of the child, the large
number of images and substantial number of separate web sites
from which the pictures were downloaded, the fact that certain
images showed the same child over and over again as part of a
series, the very real facial expressions of the children
(sometimes multiple children in the same image), the extremely

Government's Trial Brief  1-20-10     15

1    is used to establish the knowledge element, the defendant

2    himself, not just a reasonable person, must have been aware of

3    the high probability that the images and videos depicted real

4    children.  Id. at 506.

5            **Forfeiture Allegation**

6            The Superseding Indictment also provides notice that the

7    government intends to seek forfeiture of any and all interest the

8    defendant has in the Maxtor hard drive, Serial Number R3036A4S;

9    the Seagate hard drive, Serial Number 3HT0QHPY; and computer

10   disks containing visual depictions of minors engaged in sexually

11   explicit conduct.  The government seeks forfeiture of these items

12   on the theory that the defendant used them, in any manner or

13   part, to commit, or to facilitate the commission of, the

14   violations alleged in Counts One through Five.

15   ///

16   _____

17   detailed close-up of an erect male penis with veins engorged, one
     video of child sex abuse in progress, and the background in the
18   photographs depicting highly detailed furniture, rumpled bedding,
     general household clutter, and extremely realistic lighting
19   effects.  The court reviewed evidence regarding: 1) the
     appearance of the images; 2) the number of images; 3) the number
20   and identity of web sites the defendant accessed; 4) the language
     used in the web sites; 5) the mode and manner by which the
21   defendant viewed and stored the images; 6) the defendant's state
     of mind; and 7) the available computer technology and manual
22   still required to create realistic images posted on the internet
     and created with the software most frequently discussed by the
23   defense.  From this evidence the court concluded that the
     defendant knew that at least one of the pictures possessed by the
24   defendant contained an image of a real child engaged in sexually
     explicit activity and that the facts also proved beyond a
25   reasonable doubt that the defendant was aware of the high
     probability that the pictures depicted real minors and that he
26   deliberately ignored the truth and was not merely foolish or
     negligent in failing to realize that the images portrayed real
27   children.  Marchand, 308 F. Supp. 2d at 510.

28   

Government's Trial Brief  1-20-10     16

# IV.   FACTUAL BACKGROUND

In late Fall, 2005, an adult male, identified herein as Victim 1 (V1)[8] went to the Redding, California Police Department to report he had been sexually molested many years before.  When interviewed by Redding Police Officer Levi Solada, V1 reported that when he was about 13 years old, defendant Elden CIBART began to molest him.  VI said the molestations began in 1971 and continued through 1973.  V1 said he had not reported the molestations earlier because he was a Christian and had forgiven CIBART.  He said CIBART had not lived in the Redding area for about 7 years[9] and that he had lived in CIBART's house during the time CIBART was gone.  V1 said he was related to CIBART, and indicated that he lived in CIBART's house because he was having financial problems and felt that CIBART owed him for molesting him.  V1 told police he had had several conversations with CIBART about the molestations.  He said CIBART told him that V1 was the only victim and that he was sorry for his actions toward V1.

V1, however, learned that there had been another victim.  He said he had been friends with another boy (now an adult male) and learned that he (V2) was similarly molested by CIBART when he was a minor.  V2 also never reported the molestations to law enforcement.  When V1 and V2 spoke about what had happened to them, they decided to report CIBART to the police.

---

[8] V1 is the defendant's nephew.

[9] CIBART was a postal employee for the Hanley-Hornbrook, California post office and resided in that area while he was so employed.  He returned to the Redding area sometime after his retirement from the postal service in 2004, and moved back into his house where he lived with V1 and V1's teenaged son.

At the time of V1's interview with police, he also told the
Redding officers that he had seen child pornography on computers
used by CIBART in his Redding, California home and believed
CIBART was presently in possession of child pornography.  V1, who
was still living in CIBART's house, said he had noticed
suspicious activity from CIBART when CIBART was using his
computer.  He said CIBART would minimize the computer screen
whenever V1 would walk into the room or near the computer.  He
also said that he had previously viewed CIBART's computer when he
lived in the Hornbrook, California area and observed a desktop
screen saver on CIBART's computer that depicted a young male
juvenile, approximately 14-15 years old, standing, wearing only a
pair of underwear.  V1 also said CIBART had a large box of
computer floppy disks in his bedroom and believed they contained
child pornography.

When asked what conduct was depicted in the images he saw,
V1 described one picture showing two minor juveniles posed
"doggie style."  He said neither juvenile was clothed, however,
he was unable to see the penis on either juvenile and could not
see penetration.  V1 described these juveniles as being about 12
to 13 years old.  He also said there were several pictures of the
same two juveniles standing with no clothes on and clearly
showing their penises.  V1 described another picture as depicting
a 12-13 year old Asian boy bound with several different colored
ribbons tied all over his body.  V1 said clothes pins pinched the
boy's penis and the boy was bent over, acting as though he was
bound by ribbons tied around his body.  V1 also described a photo
of an approximately 7-year old boy who appeared as though he was

being sexually assaulted by another juvenile boy about 14 years old.  The 14-year old was standing behind the 7-year old in a "doggie" style pose.

Because of the information provided by V1, Redding police visited CIBART's Redding residence on January 18, 2006.  When they arrived at the house, Officer Allen Mellon made contact with the defendant and told him police were investigating allegations of child molestation and asked the defendant if he would speak with them.  Officer Mellon also told the defendant it had been reported that the defendant had downloaded child pornography from an internet website.  The defendant agreed to speak with Officer Mellon and confirmed he had downloaded child pornography from the internet.

**Defendant's Statement**

The defendant identified an older computer in his bedroom as belonging to him.  He said he had used this computer on past occasions to download images of nude juvenile males from internet web sites.  He also said that the computer floppy disks located in a box on the floor of his bedroom belonged to him and that he had saved photos of young boys to these floppy disks.  CIBART also told officers that a newer second computer, located in his kitchen, belonged to him.  CIBART provided law enforcement verbal and written consent to conduct an on-site search of that computer.  When a search was conducted, the computer was found to contain images of nude, prepubescent males.  Some of the images focused on the genitalia of the juvenile males.  In addition, the forensic investigator found two video clips.  One depicted a prepubescent male juvenile engaged in an act of masturbation.

When the investigator showed the defendant the images he had found, CIBART said that he frequently downloaded images of young boys from internet web sites.  He claimed he immediately deleted images of nude juvenile males as "that was not his preference." CIBART signed a second consent to search form to permit police to conduct further analysis of his computers and floppy disks.

CIBART confirmed that he had engaged in sexual relations with Victims 1 and 2 when they were minors, and also, claimed he had engaged in sexual relations with a third young male.  CIBART said the third male was 18 years or older at the time of the sexual conduct.  CIBART recalled that the conduct he engaged in with Victims 1 and 2 involved "kissing and fondling" and that they may have engaged in oral sex, but he could not specifically recall.  CIBART said there was "no penetration."

**Forensic Examinations**

The computer hard drives seized from CIBART's residence were submitted to the Department of Homeland Security's computer forensic lab for copying and a preliminary analysis.  A second analysis was conducted by a computer forensic specialist assigned to the Child Exploitation and Obscenity Section of the United States Department of Justice in Washington, D.C.  The hard drives were a Maxtor hard drive, model number R3036A4S, taken from the older computer found in the defendant's bedroom, and a Seagate hard drive, serial number 3HT01HPY, taken from the newer computer located in the kitchen.  The 539 floppy disks were reviewed by the case agent, ICE Special Agent Ross Godwin.

The first phase of the forensic examination was performed by ICE Special Agent Da Shun Li.  Agent Li made a forensic copy of

each of the two hard drives for purposes of his forensic
examination.  He then confirmed that images and videos depicting
minors engaged in sexually explicit conduct were on each of the
imaged drives.  Agent Li prepared a CD containing the images and
videos of child pornography he found on the two drives and sent
that disk to the National Center for Missing and Exploited
Children in order to compare the images and videos against
NCMEC's database of known and previously identified victims of
child sexual abuse, whose images and videos of sexual abuse have
circulated on the internet.  Among defendant's collection of
images and videos were images depicting two known boys whose
images of sexual abuse were produced outside California,
specifically in Kentucky and Illinois.[10]

Once defendant's counsel informed the government the
defendant wished to proceed to trial, the government sent
forensic copies of the Maxtor and Seagate hard drives produced
and reviewed by Special Agent Li, and images from the computer
floppy disks reviewed by Special Agent Godwin, to a second
forensic examiner assigned to the United States Department of
Justice's, Child Exploitation and Obscenity Section (CEOS), for
further examination so as to determine the manner in which the
defendant downloaded images and videos.  CEOS Computer Forensic
Specialist Matthew Goward conducted an in-depth analysis of both
the Maxtor and Seagate drives, as well as a copy of the images
distilled from the 539 floppy disks the defendant possessed.

---

[10] The boys were identified as the victims in NCMEC's "Jesse"
and "theboyz" series.

1    During his analysis of the forensic copies of the Seagate
2    and Maxtor hard drives, Forensic Specialist Goward confirmed that
3    the defendant's Internet Service Provider was Snowcrest.net
4    located in Mt. Shasta, California and that his username for
5    Internet access was "roadmap".  Internet access via Snowcrest was
6    accomplished through a dial up account to phone number 248-0071.
7    An image file appearing to depict the defendant, was identified
8    on the Maxtor hard drive with a filename "roadmap.jpg".

9    **The Seagate Hard Drive**

10   Goward's analysis of the Seagate, a 20 GB hard drive,
11   uncovered the same images and videos found by Agent Li, and many
12   more.  For the most part, the images depicted pre-teen and teen
13   boys; some included images depicting boys engaged in
14   sadomasochistic abuse.

15   Several user created folders were identified on the root
16   C:\directory of the Seagate.  Many of these user-created
17   directories contained child pornography images, again, depicting
18   pre-teen and teenage boys.  Among the user-created folders were
19   folders titled **Dock**, **Flo**, **Kirk**, **Tattoo**, **Today**, **Happiness** and **Joy**.
20   In the folder named **Kirk** were 40 images depicting a pre-teen boy
21   posing nude or partially nude in a series of photographs.  In the
22   folder **Tattoo**, were 14 images of a preteen boy posing clothed and
23   partially clothed in a series of photographs.  The images
24   contained a watermark for the website www.bd-company.com and
25   www.bd-company.net.  According to Forensic Specialist Goward, the
26   bd-company website is a distribution website for child
27   pornography pictures.  The website is often encountered in child
28   pornography investigations.  In the folder titled **Dock**,

1   CFS Goward found 546 images depicting pre-teen boys swimming at a

2   lake and playing on and around a dock.  Many of the images showed

3   the boys up close and focused on the boys' genitals.  In many of

4   the images, the photographer focused on the separation area

5   between the boys' genitals and their bathing suits.  Although

6   many of the images show the boys partially clothed, wearing

7   underwear or swimsuits, some of these images depict minors

8   engaged in sexually explicit conduct as they are lascivious

9   displays of the boys' genitalia.  United States v. Knox, 32 F.3d

10  733 (3rd Cir. 1994)(An exhibition of the genitals or public area

11  encompasses visual depictions visual depictions of a child's

12  genital or public area even when these areas are covered by

13  clothing).  See also, United States v. Roderick, 62 M.J. 425

14  (C.A.A.F. 2006), where the court found photos lascivious where

15  the pubic area was the focal point, where the child was partially

16  or fully nude, and where the depiction was intended to elicit a

17  sexual response.  The government may offer some of these images

18  during its case in chief, as evidence of the defendant's intent

19  to download and possess sexually explicit images of boys.

20      Numerous other images of child pornography were found in

21  other folders on the Seagate including the **Windows\Temp\Data** and

22  **C:\Recycled** folders which contained numerous images of nude and

23  partially nude preteen boys.  Many of these images depicted boys

24  engaged in sexually explicit conduct.

25      Twenty-four suspect child pornography movies were found on

26  the Seagate hard drive, including those identified in Counts

27  Three, Four, and Five of the Superceding Indictment.  Many of

28  these movie files had the word "bibcam" in the title.  "Bibcam"

is known by investigators and child pornography collectors to
stand for "Boys in Bedroom Camera".  These files were identified
in the Seagate's Windows\Temp\downloads folder or in the hard
drive's Recycle folder.

Forensic Specialist Goward discovered that the Seagate's
Recycle Bin contained many child pornographic image and movie
files.  He will explain that the Recycle Bin acted as a storage
area on the computer for files, much in the same way a trash can
holds documents near a desk.  The Recycle Bin works in the same
manner in that files can be placed inside the Recycle Bin without
permanently deleting them.  The user must actively empty the
Recycle Bin for the files to be deleted and no longer visible or
restorable from that folder.  Files maintained in the Recycle Bin
can be readily accessed by the computer user at any time.   In
this case, the evidence will likely reveal that the defendant
used the Recycle Bin as a storage folder from which he would then
access image and video files.

Evidence from Goward's analysis of the Seagate will further
reveal that although the video files identified in Counts Three
and Four were downloaded to defendant's TEMP/downloads folder on
or about January 7 and 9, 2006, respectively, both of these video
files were viewed on a date (January 10, 2006) other than the
date each was received.  The significance of such evidence
demonstrates that the defendant was able to access these files
even though they had been downloaded to a temporary folder.[11]   On

_____

[11] The computer evidence will reveal that "bibcam 12yo Caddy
super cute boy jerks.avi" as referenced in Count 3, was
downloaded on January 7, 2006, at 10:45:14 p.m., and later played

1   the January 18, 2006, the date defendant's computers were seized,

2   those video files were still in the Seagate's TEMP/downloads

3   folder and were readily retrievable.

4       Of the video files the defendant is alleged to have

5   downloaded on January 16, 2006, as charged in Count Five, the

6   evidence will reveal they were viewed within minutes following

7   each download.  Again, all but one of these video files were

8   retained in the Seagate's TEMP/downloads folder and were readily

9   retrievable by any user of that computer hard drive.

10      Forensic Specialist Goward discovered, and will testify,

11  that many of the charged images were downloaded from News Groups

12  and News Group services.  A News Group is an internet service

13  provided by Internet Service Providers and Internet content

14  providers that allow News Group users to communicate with one

15  another quickly and easily.  They are similar to bulletin boards

16  in that a user can post a comment, picture or video and have

17  others respond to what has been posted.  These pictures, videos

18  and text can also be downloaded and saved by people using the

19  News Group.  There are thousands of available News Groups that

20  cover a wide range of topics.  One of the Internet content

21  providers for News Groups is Giganews.com.  Goward's review of

22  the defendant's Seagate hard drive revealed the defendant used

23  _____

24  on January 10, 2006 at 11:15:13 pm.  The computer evidence will

25  further reveal that "Bibcam - cool Shows.mpg" as referenced in
    Count Four, was downloaded on January 9, 2006 at 9:39:45 a.m.,

26  and later played on January 10, 2006 at 11:17:07 p.m.  As the
    evidence will reveal, however, the actual time of the downloads

27  was approximately two hours prior to the time indicated on the
    computer because each computer's internal clock was approximately

28  two hours behind the true time.

**Government's Trial Brief  1-20-10**    25

1  Giganews.com, and that he subscribed to the service on or about

2  July, 12, 2005 at 1:19:19 GMI.  Business records obtained from

3  Giganews.com reveals that the defendant subscribed to Giganews

4  between October 10, 2002 and December 10, 2006.

5      During this review of CIBART's computer hard drives,

6  Forensic Specialist Goward learned that among the News Groups the

7  defendant selected, were alt.fam.prettyboy;

8  alt.binaries.pictures.asparagus; alt.binaries.bnd; alt.oyp.sworp;

9  and al.fan.snuffles.  Each of these News Groups contained images

10 of pre-teen boys.  References to additional News Groups also

11 appeared on the defendant's hard drive.  They include:

12 alt.binaries.pictures.erotica.teen.d;

13 alt.binaries.pictures.erotica.teen.male; alt.sex.boys;

14 alt.binaries.pictures.asparagus;[12] alt.fan.teen.idols;

15 alt.sex.bondage.bdsm, and others.  Such evidence is relevant to

16 show the source of certain images and videos.  The identity of

17 New Groups the computer user accessed also evinces his intent to

18 obtain sexually explicit images of young boys.  CFS Goward will

19 explain that the term "asparagus" is used in the distribution of

20 child pornography as it refers to the uncircumcised penis of a

21 young boy.

22      CFS Goward also discovered that some of these sites were

23 stored in defendant's internet browser as bookmarks.  Among the

24 bookmarks on the Seagate hard drive were BoyMoment.com

25 (www.boymoment.com); BoyLover.net (www.boylover.net); BoyActors

26

27      [12] Computer Forensic Specialist Goward will testify that in
   his experience, groups marked alt.binaries are often used to
28 distribute child pornography.

Forum-Index (www.boyactors.net); The Bulge Report: the Latest on the male Package (www.bulgereport.com); Public Schools-School Directory (www.publicschoolsreport.com); Free School Reports (www.school-stats.com) and MMSA -entry page (www.malespank.net). As CFS Goward will testify, persons normally will bookmark sites they intend to visit frequently or with ease.  The fact that the defendant's computer included bookmarks for websites that contained images of boys, further evinces defendant's sexual interest in boys and his intent to download and possess sexually explicit images of boys.

A review of the Seagate's Netscape History file from January 17, 2006 to January 18, 2006, shows listings of the websites the defendant's computer had visited.  One of the internet sites he frequented during that two-day period was YouTube.  He also conducted numerous searches via Google and to Google Groups.

Goward's review of the history.dat file confirmed the defendant's prior use of Youtube, Google, and Google Groups. Some of the search terms identified in the history file include: Youtube.com (Thong boy, buttplug, penis, boy running, boy shower, shower, humiliation, naked boy, streaker, boy pantsed, boy stripped).  The History file also revealed Google searches with search terms "Teen-Boi_Series" and "BoysTease" from which an image file "jackinoncam.jpg" appears to have been downloaded.

Again, CFS Goward's testimony concerning search terms used on the Seagate hard drive are relevant to demonstrate the intent of the user to find images of boys, including sexually explicit images of boys, and his knowledge that images he downloaded from the internet likely contained visual depictions of minor boys

1  engaged in sexually explicit conduct.   Such evidence is also
2  relevant to show the computer user's use of the internet to find
3  sexually explicit material involving boys.

4  **The Maxtor Hard Drive**

5      When he examined the Maxtor hard drive, Goward found several
6  hundred images of suspect child pornography.   The images depicted
7  pre-teen and teen boys, with several of the images depicting boys
8  engaged in sadomasochistic abusive conduct.   Several user created
9  folders were identified on the root C:\directory.   Many of these
10 user created directories contained child pornography images,
11 which depicted pre-teen and teen boys.   Among the folders was one
12 titled UP, which contained 22 images of boys depicted in sexually
13 explicit conduct.   Most of these images appear to be from the
14 "Jessie" series of images identified by the National Center for
15 Missing and Exploited children.   These images had been moved to
16 the Recycle Bin on the computer.   Evidence will reveal that the
17 victim in the "Jesse" images was 14 years old or younger at the
18 time the images were produced.   The images were manufactured in
19 the state of Kentucky.   Also, on the Maxtor hard drive was an
20 image file titled "055.jpg," which depicted identified known
21 minor boys whose image was produced in the state of Illinois.

22 **Floppy Disk Analysis**

23     On June 16 and 17, 2009, ICE Special Agent Ross Godwin
24 re-examined the 539 computer floppy discs seized from the
25 defendant's bedroom on January 18, 2006.[13]   He confirmed his

26  ────────────────

27     [13] Agent Godwin first examined all 539 floppy disks upon
   receiving them from Redding Police Investigator William Schueller
28 who seized them from CIBART's residence on January 18, 2006.

earlier review that 60 of the discs contained what he believed were images depicting minors engaged in sexually explicit conduct.  Agent Godwin will testify that in reaching this conclusion he applied a conservative definition of sexually explicit conduct, and that there likely were very many more image files that contained child pornography.

The image files distilled by Agent Godwin were provided to Computer Forensic Specialist Matthew Goward in Washington for further examination.  These images were also submitted to the National Center for Missing and Exploited Children for comparison against its database of known victims of child sexual abuse.  Of the numerous images and videos submitted, 473 were identified as depicting known, previously identified victims of child sexual abuse whose images of abuse have been circulating on the internet.  The vast majority of the identified images came from the "Jesse" series, involving the previously referenced child victim whose images were taken in the state of Kentucky.  The defendant maintained images from the "Jesse" series on floppy disks and on both hard drives.[14]

---

During this review he copied several hundred images he believed depicted sexually explicit images of minors to a folder he created to document his review process.  At this time, Agent Godwin also created a spreadsheet that included the file name of each image of child pornography.  Included in the spreadsheet was data documenting the creation date, file size, last accessed date of each image of child pornography Agent Godwin found on defendant's floppy disks.

[14] The 539 floppy disks were provided to the defense for their review on two separate occasions.  Additionally, the images identified by Agent Godwin as child pornographic, found on 60 of the floppy disks, were provided to the defense forensic examiner for her review as well.  Finally, on January 12, 2010, the

### V.   GOVERNMENT'S CASE-IN-CHIEF

#### A.   Witnesses

The government will call V1 who first reported the defendant to the Redding Police officers.

V1 will testify that in 1996, he moved into CIBART's Redding, California residence at ███████ Way.  At the time he moved in, the defendant was not living at his Redding residence. Rather, he worked as a postmaster for the northern California community of Hanley-Hornbrook and is believed to have lived in the nearby community of Hilt.  According to V1, the defendant lived there until he retired from his postmaster job.  After his retirement, the defendant moved back to his Redding residence at ███████.  V1 recalls this move took place sometime in July, 2005.  At this time V1 was living in the ███████ Way residence with his 17-year old son.  From the time CIBART moved back to Redding in July 2005, up through the date police seized his computers and floppy disks on January 18, 2006, CIBART lived with V1 and his 17-year old son.

V1 will testify that during this period, he observed CIBART use his computer that was located in the dining area of his house.  He will testify that typically CIBART used his computer late at night and that when CIBART observed someone watching him on his computer, he would minimize his monitor's screen.  V1 will

government will make available for viewing by the defense all of the floppy disk images it intends to offer at trial. Additionally, the government also intends to make available to the defense all of the attachments to Matthew Goward's forensic report that contained child pornography.  Copies of the Goward's attachments containing text were previously provided to the defense on October 1, 2009.

also testify that he observed images he believed depicted minor boys engaged in sexual conduct on the defendant's computer.  He will further testify that the defendant appeared to have a fairly good grasp of the internet and computers, and that he would sometimes answer the defendant's questions about how computers functioned.  The victim will testify that he reported his observations to the Redding Police in November 2005, about 4 months after CIBART returned to his Redding residence.

Redding Police Officer Alan Mellon and Investigator Paul Schueller will testify about going to the defendant's Redding, California residence on January 18, 2006, at which time they obtained consent from CIBART to seize and search his computer hard drives and floppy disks.  The officers will testify about finding images of child pornography during the on-site preview of CIBART's hard drive and about CIBART's statement wherein he acknowledged he downloaded images of boys from the internet. Investigator Schueller will testify about the protocol he used to seize the defendant's computer equipment and disks and place them in evidence.

ICE Special Agent Ross Godwin will testify about assuming custody of the floppy disks and hard drives seized from the defendant's residence and delivering the hard drives to ICE Special Agent and Computer Forensic Specialist Da Shun Li.

Agent Godwin will also testify how he personally reviewed all 539 of CIBART's floppy disks and that he pared the floppy disks down to 60, which in his conservative opinion, contained images depicting minors engaged in sexually explicit conduct.

He will also testify how the 60 original floppy disks were

later sent to CEOS Computer Forensic Specialist Matt Goward for his review, and that copies of the sexually explicit images were sent to the National Center for Missing and Exploited Children for comparison to NCMEC's database of known and previously identified images of minors depicted in child pornographic images and videos.  Through the testimony of Agent Godwin, the government will offer 39 images identified by Agent Godwin as evidence of the defendant's possession of child pornographic images, as alleged in Count One.  The images offered come from 7 of the 539 computer disks possessed by CIBART and reveal creation dates traversing 2003.  The 39 images represent a small percentage of the sexually explicit images possessed by CIBART on January 18, 2006.

ICE Special Agent and Forensic Examiner Da Shun Li received the original Maxtor and Seagate hard drives from Agent Godwin and made forensic copies of each drive.  After his preliminary examination of the imaged drives, Agent Li sent the original hard drives back to Agent Godwin.  Upon the prosecutor's request, Agent Godwin, in May 2009, sent forensic copies of the imaged hard drives produced by Agent Li, to CEOS Computer Forensic Specialist Matt Goward for an in-depth review of data found on the Maxtor and Seagate drives.  CFS Goward will testify about his analysis of both drives.  Details of his testimony are contained in the section above titled Forensic Examinations.

The government will provide evidence in the form of a stipulation with the defense that the defendant had internet service during the relevant time period.

A witness from Giganews.com will also be called to testify

that the defendant was a subscriber to Giganews.com.  This witness will also testify about Giganews.com, how it functions, and where its servers are located.  Where the evidence will reveal that the videos and images alleged received in Counts Two through Five were downloaded onto CIBART's Seagate drive from News Groups via Giganews.com, the location of Giganews.com servers is relevant to establish that the videos and images traveled in interstate commerce before finding their way onto CIBART's hard drive in California.

The government will also call several law enforcement officers who will testify that the individuals depicted in the images of child pornography offered to prove the possession charge are real children who were minors at the time the images were produced.  The evidence will reveal that the images depicting their sexual abuse were produced outside the state of California.  Each image, therefore, must have been transported across state lines in order to be found on the defendant's computer in California.

**Trial Stipulations**

The parties have entered into several stipulations which likely will eliminate the need to call certain witnesses.  To date, the stipulations relate to the defendant's internet service provider during the relevant time period when images were downloaded and possessed; the Bios date and time on CIBART's two computers; and the location of manufacturer of the Seagate and Maxtor drives, and the floppy disks that contained images of child pornography.  The government will provide these stipulations in the government's trial binder to the Court.

Additionally, the defense has indicated it would stipulate that the minor's depicted in the unidentified images and videos the government intends to offer are real children.  This stipulation is based on a report by FBI Computer Graphics Expert Dr. Nicole Spaun of the FBI's Forensic Audio Visual and Image Analysis Unit. Dr. Spaun was provided with the images and videos the government intends to offer at trial, and following her analysis of each, opined each depicted real child.

The defense had previously stipulated, on December 18, 2009, to the chain of custody of the hard drives seized from the defendant's residence on January 18, 2006, the forensic copies of each drive, and their admissibility at trial.  On January 6, 2010, the defense withdrew this stipulation.

Most of the images and videos offered to prove the receipt counts do not depict identified minor victims.  Therefore, the government will offer testimony from pediatrician Dr. Angela Rosas, currently with Sacramento's Sutter Medical Center, to opine that the "children" in videos and images the government intends to offer to prove defendant's receipt conduct as alleged in Counts Two through Five are in fact minors.

   B.   **Count One - Possession on January 18, 2006**

        1.   **Jurisdiction**

The charge in Count One, 18 U.S.C. § 2252(a)(4)(B), criminalizes the knowing possession of matter that contain visual depictions of minors engaged in sexually explicit conduct which have been mailed, or shipped or transported in interstate or foreign commerce by any means including by computer, or which were produced using materials which have been mailed or shipped

or transported in interstate or foreign commerce.  In this case,
the jurisdictional requirement for possession is satisfied two
ways.  First, the government intends to offer evidence that a
number of the images possessed by the defendant on the floppy
disks and the Maxtor hard drive depicted known and previously
identified minors whose visual depictions of sexual abuse were
produced outside the state of California.  For those images to
appear on the defendant's floppy disks and computer hard drive in
California, they necessarily had to have crossed state
boundaries.[15]  Therefore, the government intends to show that the
sexually explicit images themselves were mailed, shipped or
transported in interstate commerce.

The government will also look to the second prong, and offer
evidence that the images were produced using materials which
where shipped and transported in interstate and foreign commerce.
Evidence, by way of stipulation, will be offered that the Maxtor
and Seagate hard drives were manufactured in Singapore.  For the
hard drives to have been possessed by the defendant in Redding,
California, they necessarily had to have traveled in foreign or
interstate commerce.  Additionally, the parties have further
stipulated that the computer floppy disks used to maintain the
collection of images possessed by defendant were produced outside
the state of California.

Testimony from the seizing officers will reveal that the

---

[15] Evidence will show that the images from the "Jessie"
series were produced in the state of Kentucky, and the image from
the "theboyz" series was produced in Illinois.  The government
will call the investigators from each of those cases to identify
each minor depicted in the images possessed by the defendant.

floppy disks were found in the defendant's bedroom and that the
defendant acknowledged the disks belonged to him.   The defendant
further acknowledged that the "older" computer, which contained
the Maxtor hard drive, belonged to him.   It, too, was found in
his bedroom.   Clearly, the defendant knowingly possessed the
matter that contained visual depictions of minors engaged in
sexually explicit conduct.

### 2.   **The Images to Prove Possession**

Hundreds of images depicting minors engaged in sexually
explicit conduct were found on 60 floppy disks and the Maxtor and
Seagate hard drives.   The government intends to offer images from
several of the floppy disks and from the Maxtor hard drive to
prove that on January 18, 2006, the defendant knowingly possessed
matter containing visual depictions of minors engaged in sexually
explicit conduct.

The government will offer images from the floppy disks
through the testimony of Agent Godwin.   Specifically, the
government will offer:

**563.jpg     564.jpg     566.jpg     571.jpg**

**574.jpg     575.jpg     576.jpg     579.jpg**

**584.jpg     586.jpg     587.jpg     588.jpg**

**jessie_dcp02569.jpg**

These files were created on floppy disks 55 and 56 on January 25,
2003 and January 26, 2003.

The government will offer the additional image files:

**j_nude_255_jacking04.jpg        j_nude_256_jacking04.jpg**

**j_nude 257_jacking04.jpg        j_nude_258_jacking04.jpg**

**j_nude_259_jacking04.jpg        j_nude_296_jacking04.jpg**

1     **j_nude_261_jacking04.jpg**

2 created on floppy disk 59 on November 30, 2003, December 3, 2003,

3 and December 4, 2003;

4     **dcp02539.jpg    dcp02577.jpg,**

5 created on floppy disk 43 on December 5, 2003 and December 18,

6 2003;

7     **jesse127[1].jpg    jesse129[1].jpg    jesse131[1].jpg**

8     **jesse132[1].jpg    jesse134[1].jpg    jesse135[1].jpg**

9     **jesse136[1].jpg    jesse139[1].jpg    jesse141[1].jpg**

10     **jessieboy2.jpg    jessieboy3.jpg**

11 created on floppy disks 8,and 15 on April 10, 2003, April 11,

12 2003, and June 6, 2003;

13     **FotoFan_AAX.jpg**

14 created on floppy disk 16 on May 21, 2003; and

15     **!jesse002ndex.jpg    !jess003ndex.jpg    !jess004ndex.jpg**

16     **!jess006ndex.jpg    !jess010ndex.jpg**

17 created on floppy disk 25 on or about April 13, 2003.

18     For the most part, these images depict the same minor in a

19 lascivious display of his genitalia.  Some depict the minor

20 masturbating.  The boy depicted has been identified by the

21 National Center for Missing and Exploited Children as the boy

22 from the "Jesse" series of images, produced in the state of

23 Kentucky prior to 2000, when the boy was less than 14 years old.

24     In addition to the floppy disk files referenced above, the

25 government will offer image files titled "p250.jpg", "055.jpg",

26 "055_1.jpg", "111.jpg", and "112.jpg" found on the Maxtor hard

27 drive to add to its proof of Count One.  These images were

28 created on defendant's hard drive between August 15, 2003 and May

31, 2005.  File "p250.jpg" was found on the Maxtor drive in the Recycled folder and depicts the same boy identified in the "Jesse" series, masturbating.  File "055.jpg" was found on the C drive on the Maxtor drive, located in the "xnews" folder.  The boys depicted in "055.jpg" have been identified as minor victims, whose images of sexual abuse were produced in the state of Illinois during the 1999-2000 school year.  The boys were about 8 years old when the image was produced.  The image shows two pre-pubescent boys lying naked face down on a bed.  There is a multi-colored comforter and a white towel under one of the boys.  The boy closest in the image has his legs spread, with his anus and scrotum exposed in a lewd and lascivious display.  The series of images depicting these victims was identified by the National Center for Missing and Exploited Children as "theboyz" series. Image file "111.jpg" depicts a boy being almost anally penetrated, and "112.jpg" depicts two prepubescent boys having anal sex.

The evidence the government seeks to offer of the sexually explicit images, having multiple "creation" dates, copied to multiple floppy disks over a span of 11 months, demonstrates the defendant's intent to possess the images maintained on the floppy disks.  Clearly the defendant was attracted to the minor depicted in the "Jesse" series as the evidence will reveal he downloaded scores of such images over a lengthy period of time.  The significance of the 2003 creation dates of the "Jesse" images also tends to show that it was the defendant who placed these images onto the floppy disks, as the defendant was not living at his Redding address at the time the files were created on the

floppy disks.  As one witness will testify, when he moved back into this Redding residence in or about July 2005, the defendant brought his box of floppy disks with him.  Further, in defendant's statement he indicated he would try to delete sexually explicit images when he accessed them on the internet because he wasn't interested in "those types" of images.  The creation of a significant number of image files depicting the same victim in the lewd and lascivious display of his genitals and masturbating, over a period of years, repudiates defendant's claim he didn't intend to possess and receive sexually explicit images.

C.  **Count Two - Receipt on October 9, 2005**

1.  **Jurisdiction for Receipt in Counts Two-Five**

The charges in Counts Two through Five criminalize the knowing receipt of visual depictions of minors engaged in sexually explicit conduct that have been shipped or transported in interstate or foreign commerce by any means including by computer.  To pass jurisdictional muster, therefore, the government must prove that the images the defendant is alleged to have received on or about October 9, 2005, and January 7, 9 and 16, 2006, were each shipped or transported across a state or foreign boundary.  As to Count Two, the government intends to show the interstate transportation two ways.

The government will offer evidence showing that on or about October 9, 2005, the defendant's Seagate hard drive received five image files.  "Jessie -142.jpg"; "Scrump05.jpg"; "Kiss (57).jpg"; "Taddy (zaiki)-046.jpg"; "Taddy (zaiki)-072.jpg"; and "Taddy (zaiki)-074.jpg".  The image titled "Jessie-142.jpg" is from the

"Jesse series" of images produced in Kentucky.   Therefore, for it
to have been received on the defendant's computer when he was
living in California, the image necessarily had to have crossed a
state boundary.   Additionally the evidence will show that the
images were downloaded via the internet and from News Groups to
which he subscribed.

      **2.   Count Two - Images to Prove Receipt on or about
October 9, 2005**

     The "Jesse" series image, "Jessie - 142.jpg" - was found on
the Seagate hard drive and will be offered along with the other
image files identified above to prove the defendant received on
October 9, 2005, visual depictions of minors engaged in sexually
explicit conduct as alleged in Count Twp.   The images show minor
boys in a lascivious display of their genitalia.   The forensic
evidence will reveal that none of these images were deleted from
the defendant's hard drive.   Testimony from Dr. Angela Rosas will
reveal the boys depicted were minors and appeared to be real
children.

    **D.   Count Three - Receipt on January 7, 2006**

      **1.   Jurisdiction for Count Three**

     Evidence will demonstrate that the video file, "bibcam 12yo
Caddy_supercute boy jerks.avi" was created and received on the
defendant's Seagate hard drive on January 7, 2006, at
approximately 10:45:14 p.m.   CFS Goward will testify that this
video was placed in the defendant's temp/download folder which
was the storage repository for files downloaded from news groups
via Giganew.com.   Giganew.com is a company based out of Austin,
Texas.   Its servers are located in the state of Virginia and in

Hong Kong and Singapore, therefore, all files downloaded via Giganews.com must first travel through the company's Virginia or overseas servers before reaching their final destination.

### 2. Video to Prove Receipt on or about January 7, 2006

The evidence will reveal that video file "bibcam 12yo Caddy_supercute boy jerks.avi" was received on the Seagate hard drive on or about January 7, 2006, and depicts a prepubescent boy, in front of a webcam, in a lascivious exhibition of his penis. The boy is wearing head phones and appears to be responding to verbal cues from someone he is listening to. He is seen to adjust the camera, and then displays his penis and appears to masturbate. The evidence will further reveal the video was last accessed (played) on January 10, 2006, and that the file was not deleted, but readily retrievable from the TEMP\downloads folder on the C drive of the Seagate. Forensic Pediatrician Dr. Angela Rosas would testify the boy is under the age of 18 years old with medical certainty and likely under 14 years old.

### E. Count Four - Receipt on January 9, 2006

### 1. Jurisdiction for Count Four

Evidence will demonstrate that the video file, "Bibcam - Cool Shows.mpg" was created and received on the defendant's Seagate hard drive on January 9, 2006. CFS Goward will testify that this video was placed in the defendant's temp/download folder which was the storage repository for files downloaded from news groups via Giganew.com. Where Giganews.com's servers are located in the state of Virginia and in Hong Kong and Singapore, any file downloaded to a California computer via Giganews.com

1  must have traveled in interstate or foreign commerce before

2  reaching its final destination.

3  **2.   Video to Prove Receipt on January 9, 2006**

4  Evidence will also reveal that video file "Bibcam - Cool

5  Shows.mpg" was received by CIBART on or about January 9, 2006, at

6  approximately 9:39:42 a.m. and last viewed on CIBART's computer

7  on January 10, 2006, at 11:17:07 p.m.  The video depicts a boy,

8  approximately 10 to 14 years in age, in front of a web camera, in

9  a lascivious display of his penis.  Testimony from Dr. Angela

10  Rosas will reveal the boy depicted is a minor and appears to be a

11  real child.  The file was not deleted and was readily retrievable

12  from the TEMP\downloads folder on the C drive of the Seagate.

13  **F.   Count Five, Receipt on Janurary 16, 2006**

14  **1.   Jurisdiction for Count Five**

15  Evidence will demonstrate that the video files,"1.mpg",

16  "Bibcam Asian 13 Yo.mpg", "11yr blonde boy fuck.wmv", and

17  "(Pthc)[Boy](Webcam) Haduri - Korean 12yo(Perfect Cum).asf" were

18  created and received on the defendant's Seagate hard drive on

19  January 16, 2006.  CFS Goward will testify that files "Bibcam

20  Asian 13 Yo.mpg", "11yr blonde boy fuck.wmv", and

21  "(Pthc)[Boy](Webcam) Haduri - Korean 12yo(Perfect Cum).asf" were

22  downloaded to the TEMP\downloads folder on the C drive of the

23  Seagate, and that video file "1.mpg" was placed in the Recycled

24  folder on the C drive.  The TEMP\downloads folder served as the

25  storage repository for files downloaded from news groups via

26  Giganew.com.  Where the evidence will show the files were

27  downloaded via Giganews.com, the files had to have crossed state

28  or foreign boundaries before reaching CIBART's California-based

computer.

**2.   Videos to Prove Receipt on January 16, 2006**

The computer evidence will reveal that video file "11yr blonde boy fuck.wmv" was received and placed on the Seagate on or about January 16, 2006, at approximately 12:09:42 a.m. and last viewed on CIBART's computer on that same day at 12:15:13 a.m. Just after this image was viewed, the additional video file, "(Pthc)[Boy] (Webcam) Hduri - Korean 12 yo (Perfect Cum).asf" was received on CIBART's computer.  According to computer data, the receipt time was 12:17:04 a.m.  It was viewed at approximately 12:19:40 a.m.  All of the above-referenced video files were retained in the Temp\downloads folder and readily available for viewing.  Video file "1.mpg", was created on or about January 16 at 7:14:16 pm.  The forensic examination revealed "1.mpg" was played via the Winamp video program about a minute later at 7:15:14 pm.  Not until January 17, 2006 at 3:16:47 a.m. was it placed in the Recycle folder.

Video file "1.mpg" depicts the rape of a prepubescent Asian boy, who appears very young, likely under the age of 10. Forensic Pediatrician Dr. Angela Rosas is prepared to testify the boy is under 14 years of age with medical certainty and likely under 10 years old.

Video file "Bibcam Asian 13Yo.mpg", depicts a nude Asian boy, about 12 to 13 years old, standing on a table, in a lewd and lascivious display of his genitals.  Dr. Rosas is prepared to testify the boy is under the age of 18 years of age with medical certainty and likely under 14 years of age.

Video file "11yr blonde boy fuck.wmv" depicts a boy being

anally penetrated by another older boy.  Dr. Rosas is prepared to
testify the younger boy is under the age of 18 with medical
certainty and likely less than 14 years old.  She will testify
the older boy is under the age of 18 years of age.

Video file "(Pthc)[Boy] (Webcam) Hduri - Korean 12 yo
(Perfect Cum).asf" depicts a boy masturbating to ejaculation.
Dr. Rosas is prepared to testify the boy is under the age of 18
years with medical certainty.

### VI.   <u>EVIDENTIARY ISSUES</u>

### A.   <u>Computer Files In General</u>

The standard for authenticating computer files or records is
the same for authenticating other records and does not vary
simply because the record happens to be originally in electronic
form.  <u>United States v. Vela</u>, 673 F.2d 86, 90 (9th Cir. 1982).
The witness who testifies to the authenticity of the computer
record need not have special qualifications and need not have
programmed the computer or even understand the technical
operation of a computer.  <u>United States v. Salgado</u>, 250 F.3d 438,
453 (6th Cir. 2001)("it is not necessary that the computer
programmer testify in order to authenticate the computer
generated records.")  Instead, the witness need only have first-
hand knowledge of the facts to which he testifies, such as
examining or seizing the computer from which the records were
obtained.  <u>United States v. Whitaker</u>, 127 F.3d 595, 601 (7th Cir.
1997).

The authenticity of the computer program itself is also
generally not a bar to the admission of evidence derived from the
use of such program.  Such challenge is defeated by providing

1 | sufficient facts to support a finding that the records are

2 | trustworthy and the opposing party is afforded the opportunity to

3 | inquire into the accuracy of such records.  United States v.

4 | Briscoe, 896 F.2d 1476 1494-95 (7th Cir. 1990).  Typically, the

5 | reliability of a computer program can be established by showing

6 | that the users of the program actually do rely upon it on a

7 | regular basis.  Id. at 1494, holding that computerized records

8 | held by a telephone company were admissible.

9 | Numerous computer files, representing a variety of evidence,

10 | will be offered during the government's case in chief.

11 | **Records Custodians**

12 | The parties have entered into a stipulation concerning

13 | defendant's subscription to Snowcrest.com, his internet service

14 | provider.  The government will also call the records custodians

15 | from Giganews.com to document the defendant's subscription to the

16 | News Group service.  The government will likely offer the hard

17 | paper copy version printout of the relevant records from

18 | Giganews.com's electronic database.  The Giganews.com records and

19 | Snowcrest stipulation regarding defendant's internet subscription

20 | are admissible pursuant to FRE 803(6) as records kept in the

21 | course of the regular practice of business activity.

22 | As for the Giganews.com's records, persons familiar with the

23 | business record-keeping practices of the business who can

24 | identify the record at issue as having been made in the ordinary

25 | course of business is a sufficient foundation witness.  Personal

26 | knowledge of the document is not required and does not affect its

27 | admissibility. United States v. Pitman, 475 F.2d 1335, 1337 (9th

28 | Cir. 1973).  Similarly, a record generated by a third party and

received and relied upon, such as an invoice, becomes a business record of the company relying upon it.  United States v. Childs, 5 F.3d 1328, 1333-34 (9th Cir. 1993); United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992); Saks Intern, Inc. v. M/V Export Champion, 817 F.2d 1011, 1013 (2nd Cir. 1987).

The government need not show that the records are accurate; it only needs to show that the records are kept in a regular manner and are relied upon for the management and operation of the business.  Johnson v. United States, 325 F.2d 709, 711 (1st Cir. 1963).  Incompleteness, ambiguities and inaccuracies in records go to weight, not admissibility.  United States v. Catabran, 836 F.2d 453 (9th Cir. 1988); United States v. Hudson, 479 F.2d 251, 254 (9th Cir. 1972).

**Images and Videos of Child Pornography**

Additionally, the government will offer evidence of the sexually explicit images maintained on defendant's floppy disks and computer hard drives.  Special Agent Godwin will testify that he obtained the original hard drives and floppy disks from the seizing officer, William Schueller who maintained custody of the items from the moment they were seized from CIBART's residence on January 18, 2006, until they were delivered to Agent Godwin. Agent Godwin then delivered the Maxtor and Seagate hard drives to Special Agent Li, who on November 6, 2006, made the imaged copies of the drives.  Da Shun Li, a trained computer forensic analyst with the Department of Homeland Security, Immigrations and Custom's Enforcement (ICE), made forensic copies of the Maxtor and Seagate drives and then confirmed they were exact forensic

duplicates of the original hard drives.[16]   The EnCase program
used by Agent Li to conduct his forensic examination of the two
hard drives is well known and is a generally accepted means of
conducting a forensic examination.   Considering the fact that
many defense experts rely upon the same program, and that defense
counsel's own forensic examiner has been permitted full access to
the imaged drives in this case, the government anticipates there
will be no objection to the use of EnCase in the present
investigation.

Once it was clear the defendant wished to go to trial, Agent
Li sent a forensic copy of both drives to Agent Godwin who
forwarded the material to Computer Forensic Specialist Goward.
Goward first compared the hash values of the imaged drives to the
hash values of the original drives seized from defendant's
residence.   After authenticating the forensic copies, he
conducted his analysis.   Following his analysis, Goward returned
the imaged copies to Agent Godwin who later made a copy of the
imaged drives available to the computer forensic examiner hired
by the defense.   This was later returned to Agent Godwin who has
retained all digital evidence up to the start of trial.

Computer Forensic Specialist Goward is prepared to testify
that the screenshots, images, videos and other demonstrative
evidence offered at trial were obtained from each of the hard
drives, and are exact representations of the data contained on
the defendant's hard drives.

---

[16] Upon making the forensic copy of the hard drives, he
returned the original drives to Agent Godwin who has retained
them up to the start of trial.

**Government's Trial Brief  1-20-10**     47

B.   **Computer Evidence and Images**

   1.   **The Admissibility of the Images of Child Pornography Possessed and Received by the Defendant**

The government intends to show the Court various portions of data recovered from the defendant's computer, including photos of child pornography.

The government intends to print out each still image of child pornography it intends to offer so as to avoid a "public" display via an overhead screen or projector.  The government has six videos to play and will arrange with the defense a means of showing each so as to avoid a public publication of the videos. Nonetheless, the government does intend to offer a sufficient number of images, to establish the elements of the offense, and to demonstrate it was the defendant who possessed the images, that he intended to possess and receive the images and videos, and that his download of such images was knowing.  For example, the government plans to offer approximately 41 image files, mostly from the "Jesse" Series, to prove the defendant knowingly possessed these images on or about January 18, 2006.  While these images depict the same victim and much the same sexually explicit conduct, the evidence will reveal that the floppy disks onto which these images were placed, were created on multiple dates, spanning years.  The creation of these floppy disks, coupled with defendant's statements that the floppy disks were his and that he created the disks from images he had downloaded from the internet, coupled with evidence of similar images found on his Maxtor hard drive, demonstrates he knowingly possessed matter containing visual depictions of minors engaged in sexually

explicit conduct on or about January 18, 2006.

While the government has no intention of introducing more images than necessary, the images that the government intends to show are an integral and essential component of the charged criminal conduct without which the Court cannot fully evaluate the crimes charged nor the defendant's intent and knowledge while committing his criminal acts.

The probative value of the images the government seeks to admit in this case is significant in several respects; as both a component of the charged offense, as well as indicative of the defendant's intent and knowledge of the age of the minors.  The vast majority of the images found on defendant's hard drives and floppy disks depict young boys of about the same pre-adolescent age, and a large percentage of the images and videos depict boys in lascivious displays of their genitalia, with erections, and/or masturbating.  In his first statement to law enforcement, the defendant said he collected pictures of young boys and that he used the personal computer in his bedroom to download images of nude juveniles males from internet web sites.  He later said he didn't actively seek out sexual pictures of boys and didn't knowingly or intentionally download the images.  This later statement is clearly repudiated by evidence of so many sexually explicit images downloaded to, viewed from, and retained on defendant's computer hard drives and floppy disks.  Where the government can show a pattern of collecting child pornography that spans more than 3 years, such evidence should be allowed to establish the identity of the person responsible for the downloads, and as evidence of defendant's intent and knowledge.

1    In <u>Old Chief</u>, the Court honored this "multiple utility"

2  rationale as additional grounds on which to reaffirm the general

3  rule that the government is free to offer the evidence as it sees

4  fit.  <u>See also</u> <u>Becht</u>, 267 F.3d at 772.  The Supreme Court noted

5  that evidence may be valuable not only for its relevance to a

6  single element, but also because it may at once prove multiple

7  elements or embolden the fact finder to infer guilt by

8  strengthening the evidentiary picture as a whole.  The Court

9  held:

10         Unlike an abstract premise, whose force depends on
           going precisely to a particular step in a course of
11         reasoning, a piece of evidence may address any number
           of separate elements, striking hard just because it
12         shows so much at once .... Evidence thus has force
           beyond any linear scheme of reasoning, and as its
13         pieces come together a narrative gains momentum, with
           power not only to support conclusions but to sustain
14         the willingness of jurors to draw the inferences,
           whatever they may be, necessary to reach an honest
15         verdict.

16  <u>Old Chief</u>, 519 U.S. at 187.

17         The images accessed, viewed, and saved by defendant are

18  highly probative of key issues in this case.  First, the

19  government must establish the prohibited conduct; namely, the

20  receipt and possession of child pornography.  <u>See</u> <u>United States</u>

21  <u>v. Hays</u>, 231 F.3d 930, 638 (9th Cir. 2000)(finding that the

22  jury's viewing of the images was not prejudicial because they

23  proved, among other things, the defendant's "personal

24  involvement" in the possession and distribution of child

25  pornography).

26         The government also must prove that the images at issue

27  depict **actual** minors engaged in sexually explicit conduct.  <u>See</u>

28  <u>United States v. Rearden</u>, 349 F.3d 608, 613 (9th Cir. 2003).

While parties could stipulate to this fact, and law enforcement agents and experts may testify that the children depicted in the proffered files were actual minors, there is no substitute for the Court's own assessment of the images.  It is essential that the Court view the images so that it can make it's independent factual findings on this issue.  See United States v. Salcido 506 F.3d 729 (9th Cir. 2007)(citing to cases from the 1st, 2d, 5th, 6th, 8th, 10th, and 11th Circuits in support of the proposition that the jury can conclude that the images were actual children based solely on their viewing of the images).

Moreover, the government must prove that the defendant **knew** that the images depicted minors.  In order to prove defendant's knowledge beyond a reasonable doubt, it is critical that the Court view the images.  Once presented with each image and associated file name, the Court will be able to decide for itself the defendant's state of mind when he received and then saved the pornographic files to disks and his hard drives, and whether anyone viewing the images would recognize, even with just a glance, that these images depict minors, that they depict real children, and whether the minors were engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).  See Ganoe, 538 F.3d 1124 ("Thus the images themselves, published to the jury as part of the government's detailed and comprehensive forensic evidence regarding the downloading, viewing, and categorizing, and storing of the files, were highly probative of the state of mind with which the files were received and possessed.").

The visual depictions of minors engaged in sexually explicit conduct in this case are not pleasant and few would choose to

view them.  However, any concern of prejudice is mitigated by the fact the parties consented to a bench trial.  As defendant's counsel observed at the defendant's waiver of jury trial hearing, the defense felt comfortable that the court would be better able to compartmentalize and not be emotionally swayed by the impact of the sexually explicit images.  Where evidence of the multiple images and videos received and possessed by the defendant over a period of more than three years is essential to establishing the elements of the offense, and is highly relevant to defendant's motive, knowledge, intent, and absence of any mistake and whether it was the defendant who downloaded the sexually explicit images, they should be admitted at trial.

### 2. **Evidence of Child Erotica Should be Admitted**

Further, the government may offer evidence of what are believed to be erotic/sexually provocative images of boys maintained in user-created files on the defendant's Seagate hard drive as evidence of his intent to receive sexually explicit images and videos, also found on the Seagate hard drive on January 18, 2006.  Evidence of a significant collection of child erotica is admissible as it is inextricably intertwined with evidence of the defendant's possession and receipt of visual depictions of minors engaged in sexually explicit conduct.  It also evinces his intent and motive in collecting the images charged in counts one through five.

Evidence is not "other acts" evidence within the scope of Rule 404(b) if it is inextricably intertwined with the crime charged.  <u>United States v. Williams</u>, 291 F.3d 1180 (9th Cir.

2002); <u>United States v. King</u>, 200 F.3d 1207, 1215 (9th Cir.

1999); <u>United States v. Soliman</u>, 813 F.2d 277, 279 (9th Cir.

1987).  Evidence is "inextricably intertwined" if it "constitutes

a part of the transaction that serves as the basis for the

criminal charge" or "was necessary to ... permit the prosecutor

to offer a coherent and comprehensible story regarding the

commission of the crime."  <u>United States v. Vizcarra-Martinez</u>, 66

F.3d 1006, 1012-13 (9th Cir.1995); see also <u>Rrapi</u>, 175 F.3d at

748-49; and <u>United States v. Montgomery</u>, 384 F.3d 1050, 1062 (9th

Cir. 2006)(government report detailing individual fraudulent acts

was inextricably intertwined with the underlying conspiracy

charge because the acts themselves comprised the conspiracy).

By his own admission the defendant sought out, downloaded,

and maintained numerous images of boys, depicted in a variety of

activities and states of dress.  Many of the images are

borderline pornographic and would typically be viewed as sexually

erotic.  Where these images were obtained from many of the same

sites the defendant visited to search for sexually explicit image

of boys, and where defendant's download of these images were

obtained during the same time period and in the same manner as

the sexually explicit images charged in the Superceding

Indictment, they are inextricably intertwined with the criminal

conduct alleged.

Further, such evidence would also be admissible pursuant to

Fed. R. Evid. 404(b) to show defendant's intent, knowledge,

motive, and absence of mistake.  <u>Huddleston v. United States</u>, 485

U.S. 681 (1988).

**Government's Trial Brief  1-20-10**      53

Evidence of other crimes or wrongs is inadmissible to prove a defendant's character in order to show a defendant acted in conformity with that character.  Fed. R. Evid. 404(b).  Such evidence, however, may be admissible for other purposes, including proof of motive, intent, knowledge or absence of mistake.  <u>Id.</u>  Evidence tending to show motive may be relevant even if motive is not an element of the charged conduct.  <u>See United States v. Bradshaw</u>, 690 F.2d 704, 708 (9th Cir. 1982).  To determine whether such evidence is admissible, courts consider whether (1) evidence tends to prove a material issue; (2) the prior act is remote in time; (3) there is sufficient evidence to support a finding that the defendant committed the prior act; and (4) if knowledge and intent are at issue, whether the act is similar to the offense charged.  <u>United States v. Mayans</u>, 17 F.3d 1174, 1181 (9th Cir. 1994).  If the evidence serves a permissible purpose under Rule 404(b), exclusion of the evidence may be justified under Rule 403, if the evidence threatens to cause unfair prejudice, confuse the issues, mislead the jury, cause undue delay, or present cumulative evidence.  <u>United States v. Curtin</u>, 489 F.3d 935, 944 (9th Cir. 2007); Fed.R.Evid. 403.  Merely inflammatory evidence need not be excluded under Rule 403; to fall within the rule, the evidence must have a tendency to entice the jury to decide the case on an improper basis.  <u>United States v. Dhingra</u>, 371 F.3d 557, 565 (9th Cir. 2004).

The first category of other acts evidence demonstrating CIBART's sexual interest in children consists of child erotica, featuring boys in a variety of images that focus on the minors'

genitalia.[17]   Analyzed under the four prongs listed above, this
evidence is admissible under Rule 404(b).

First, the evidence is material.  The defendant's possession
of sexual imagery of young boys, touted as erotica tends to prove
his sexual attraction to boys and therefore his motive in
downloading both erotic images as well as the sexually explicit
images.  See United States v. Brand, 467 F.3d 179 (2nd Cir.
2006)(Evidence of defendant's possession of child erotica
relevant and admissible pursuant to FRE 404(b) to prove the
defendant acted with state of mind necessary to commit the
offense charged).  Second, remoteness is not an issue with
respect to this evidence because these images were found on
defendant's computer at the time it was seized and downloaded
during the same 4-year time-frame he collected child pornography.
Third, the images were placed in user-created folders, not
deleted, and the defendant admitted that he had downloaded and
saved images of male youth, including some that depicted them in
the nude.  Such a person is more likely to be interested in and
to knowingly receive child pornography, rather than to receive
the images accidently without the requisite knowledge or intent.
Fourth, the defendant may contend at trial that he possessed
child pornography by mistake, and his knowledge is an element of
the Government's burden of proof.  Therefore his state of mind -
whether he knew he was receiving child pornography - is a

---

[17] Although many of these images depict lascivious exhibition
of the genitalia in the government counsels' opinion, adopting a
conservative view of sexually explicit conduct, the government
will categorize this series of images as child erotica.

**Government's Trial Brief  1-20-10**      55

material issue in this case.   Seeking out, downloading and saving to user-created folders sexually provocative images of young boys, would tend to show that his receipt of sexually explicit images was not a mistake, but rather knowing.   In addition, the act of possessing child erotica is sufficiently similar to the act of possessing child pornography.

Finally, the probative value of this evidence is not substantially outweighed by a risk of unfair prejudice.   Any possible prejudice is mitigated by the fact, again, that this is a court trial, and the district court judge can confine consideration of the defendant's child erotica collection to the issues of his motive, knowledge, and intent in receiving the images and videos alleged in Counts Two through Five. Accordingly, any motion by the defendant to exclude evidence of the defendant's child erotica collection should be denied.

### 3.   Admissibility of the Defendant's Internet History and Bookmarks

The government intends to offer into evidence content from defendant's computer hard drive, revealing he frequented internet sites known to contain sexually explicit images of children. Such evidence is relevant to show the source of defendant's child pornography, and further, to demonstrate his motive, intent, knowledge, and absence of mistake relevant to his receipt of visual depictions of minors engaged in sexually explicit conduct. If the defendant were to argue he only wanted non-pornographic images of happy, playful, clothed boys, then he had no business frequenting sites that housed child pornography.   The fact he

received and downloaded images depicting boys engaged in sexually
explicit conduct was no mistake since the sites he went to
featured child pornography.  As such, evidence of this sort is
admissible.  See United States v. Salcido, 506, F.3d 729 (9th
Cir. 2007)(sexually explicit chat logs properly admitted to
establish that defendant knew the images on his computer depicted
minors); See also United States v. Dhingra, 371 F.3d 557, 566-67
(9th Cir. 2004)(admissions of online chats that the defendant had
with persons other than the victim were indicative of his intent
and modus operandi).

### C.   **Defendant's Defense/Motions in Limine**

The government moves to exclude any alibi defense as it
relates to Counts One through Five of the Indictment because the
defendant has failed to provide notice pursuant to Fed. R. Crim.
P. 12.1.  The government also moves to exclude any reference to
the statutory affirmative defense set forth in 18 U.S.C. §
2252(c) because the defendant has failed to meet the requirements
of that affirmative defense; namely that he collected fewer than
three images and then promptly and in good faith either destroyed
the images without passing them on or turned them into law
enforcement.

### D.   **Other 404(b) Evidence**

The government may offer evidence of the defendant's sexual
abuse of two minors in the 1970's.  At present, the government is
not inclined to offer such evidence during it's case in chief.
If, however, the defendant claims that he did not put the images
of child pornography on his computer, and/or that he did not

knowingly download such images, the government may offer such evidence to rebut his claim.  Evidence of defendant's prior acts of molestation of young adolescent boys would be relevant to show his intent and motive in seeking out, downloading, and possessing visual depictions of minors engaged in sexually explicit conduct and would be admissible pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure.  As the court in United States v. Brand, observed, "...other courts have recognized a "link...between child pornography and pedophilia,", Brand, 467 F.3d at 197-98 (citing United States v. Byrd, 31 F.3d 1329, 1336 n. 9 (5th Cir. 1994)(upholding the admissibility of defendant's pedophilia to show his predisposition, and to rebut the claim that the defendant was entrapped into ordering and receiving child pornography)).[18]  CIBART's sexual abuse of young boys is relevant because it shows he harbors a sexual interest in children, thereby demonstrating his intent to knowingly receive child pornography.  Such a person is more likely to seek out and knowingly receive child pornography, rather than to receive the images accidently without the requisite knowledge or intent.  His past molestations of two boys is particularly relevant since nearly all of the images he received and possessed were of adolescent boys, engaged in the type of sexual conduct he admitted committing with his two victims.  Additionally, at the time of their molestation, the  boys were of the same age as the

---

[18] In Bryd, the Fifth Circuit recognized the links between pedophilia and pornography in the context of proving predisposition.  31 F.3d at 1336.

children depicted in his sexually explicit images.[19]

**E.   Chain of Custody**

Rule 901(a) governs authentication of evidence and provides that authentication is "[s]atisfied by evidence sufficient to support finding that matter is what proponent claims." Fed. R. Evid. 901(a).  The court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991)(citing Gallego, 276 F.2d 914, 917 (9th Cir. 1960).  "[I]n the absence of any evidence of tampering, a presumption exists that public officers 'properly discharge[ ] their official duties.'" Id.  Furthermore, "[m]erely raising the possibility of tampering is not sufficient to render evidence inadmissible." Harrington, 923 F.2d at 1374 (citing United States v. Vansant, 423 F.2d 620, 621 (9th Cir. 1970)).

In this case, the government intends to offer the two original hard drives seized from CIBART's residence on January 18, 2006; the forensic images of the two drives which were used by the forensic examiners to determine the contents of the hard drives; and several floppy disks seized from defendant's residence.

---

[19] In Brand, the court observed that the "causal link between possession of child pornography and the commission of sexual crimes need not be proven conclusively for the evidence in question to be admissible." Brand at 199.  The court stated that there was enough similarity or connection between the two so as to make the pictures on Brand's computer relevant to his intent in driving to another state to spend time with a young girl he had met on the internet.  Id.

On December 18, 2006, the defense represented to the United States its willingness to stipulate to the chain of custody, authenticity, and admissibility of the computer media that both the Government and defense computer forensics expert examined. Relying on this representation, the government had in good faith not planned on calling every witness involved in the chain of custody of the computer media at issue.  On January 6, 2010, however, the defense withdrew from its pledge to stipulate to the authenticity and admissibility of the relevant computer media.

The defense has neither alleged nor is there evidence of tampering of the electronic evidence.  In fact, even the defendant's own forensic expert witness examined and verified the forensically-imaged media in this case and in her own words "verified without errors" the media.[20]

Neither the defense attorneys, the defendant investigator,

_____

[20] In her report, the defense analyst stated she conducted a review of both the Maxtor and Seagate drives to verify the integrity of the files and confirmed that the files were not accessed after the date of seizure.  In her own words she stated the following:

Maxtor: "I sorted all files on HDD01 by Last Accessed date to confirm the original evidence was not accessed after it was seized. The evidence revealed that HDD01 was last accessed on 01/15/06 which is consistent with no access after it was seized."

Seagate: "I sorted all files on HDD02 by Last Accessed date to confirm the original evidence was not accessed after it was seized. The evidence revealed that HDD01 was last accessed on 01/18/06 which is consistent with no access after it was seized."

nor the defense expert, all of who had multiple opportunities to examine the media, have alleged the existence of an issue regarding authenticity with the media, yet have now curiously withdrawn their consent to stipulate.[21]  Nonetheless, in the absence of a stipulation, the government will call the appropriate witnesses who examined the electronic evidence throughout the course of this investigation to establish that the electronic media is in the same condition today as it was when it was when seized from defendant's residence on January 18, 2006.

The government intends to introduce three sets of computer media into evidence: (1) The Maxtor original hard drive and forensic imaged DVD copy; (2) the Seagate original hard drive and forensic imaged DVD copies; and (3) approximately eight floppy disks.  In this case, the hash value (or digital signature) of the data found on the forensic images of the two hard drives will be one means the government will use to authenticate the forensic copies of the hard drives and establish they truly depict the contents of the original hard drive.[22]

_____

[21] Interestingly, without such a the stipulation, the defense would also need to authenticate media examined by its expert in a similar fashion.

[22] Each hard drive has a unique identifiable alpha-numeric code, called a hash value, associated with that media.  This hash value is unique to that particular piece of media, similar to the uniqueness of a fingerprint, such that when a forensic image copy of that hard drive is created, the original media's hash value is also imprinted onto the forensic image copy.  Even a slight change to the contents of the forensic copy will deviate the hash value.  A match of the hash values of the forensically imaged hard drives would indicate that the contents were correctly copied, and accurately reflect the contents of each original hard drive.

**Government's Trial Brief  1-20-10**     61

1    In the case of the floppy disks, Agent Godwin will testify

2  that as soon as he received the disks from the seizing

3  investigator, he looked through all 539 floppy disks for evidence

4  of child pornography.  He is prepared to testify that upon his

5  initial screening he identified 60 floppy disks that contained

6  sexually explicit images of minors and that he copied those

7  images to a separate computer folder he created for this review.

8  He also prepared a spread sheet at this time, listing all of the

9  image files by name, file size, and creation and last accessed

10 dates, so as to be able to go back and verify the authenticity of

11 the images against the original data.  Agent Godwin will also

12 testify that he engaged the write block on each floppy disk

13 during his review so as to preserve the integrity of the

14 evidence.

15     After the floppy disks were made available for defense

16 inspection, Agent Godwin once again went back to the original

17 floppy disks to number them once again and verify that the files

18 he had previously identified were still on the floppy disks.  He

19 is prepared to testify that the images and the floppy disks the

20 government intends to offer at trial, are in the same condition

21 today, as they were when he conducted his first analysis.

22     While the government intends to fully authenticate the

23 evidence, the Government is not required to produce all persons

24 who had possession of evidence to establish proper chain of

25 custody.  <u>United States v. Gallego</u>, 276 F.2d 914, 917 (9th Cir.

26 1960).  It is well established that a break in a chain of custody

27 only goes to the weight rather than the admissibility of that

28

evidence.  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (citing United States v. Godoy, 528 F.2d 281, 284 (9th Cir. 1975)); See also United States v. Robinson, 967 F.2d 287, 292 (9th Cir. 1992).

While the government will attempt to limit the amount of time and witnesses needed for authentication, it is likely that this process may consume more court time than otherwise would have been required.

**F.   Judicial Notice**

Pursuant to Federal Rule of Evidence 201 (d), the Court shall take judicial notice of a fact, if requested by a party and supplied with the necessary information.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Unless the defense agrees to stipulation, the government shall ask the court to take judicial notice of the following facts:

```
January 5, 2002 was a Saturday;
January 25, 2003 was a Saturday;
January 26, 2003 was a Sunday;
April 10, 2003 was a Thursday;
April 11, 2003 was a Friday;
April 13, 2003 was a Sunday;
May 21, 2003 was a Wednesday;
June 6, 2003 was a Friday;
June 7, 2003 was a Saturday;
```

December 3, 2003 was a Wednesday
December 4, 2003 was a Thursday;
December 5, 2003 was a Friday;
December 18, 2003 was a Thursday;
October 9, 2005 was a Sunday;
January 8, 2006 was a Sunday;
January 9, 2006 was a Monday;
January 10, 2006 was a Tuesday; and
January 16, 2006 was a Monday.

The government shall provide, if needed, calendars for 2002, 2003, 2005 and 2006 so as to assist the court in making such factual findings.

G.   **Demonstrative Exhibits**

Given the technical nature of the evidence in this case, the government may use demonstrative exhibits to help explain various matters to the Court, including basics of the internet (in particular News Groups, internet searches using search terms, and access to web sites), techniques used in analyzing the defendant's computer, the information recovered, and the significance of that information.

The government may also offer summaries and charts gleaned from the computer evidence acquired.  The Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary or calculation".  The Ninth Circuit has recognized that summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." United States v. Shirley, 884

F.2d 1130, 1133 (9th Cir. 1989), quoting <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983); <u>see also</u> <u>United States v. Meyers</u>, 847 F.2d 1408, 1412 (9th Cir. 1988)(approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).  Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence.  <u>United States v. Meyers</u>, 847 F.2d at 1412.  The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient.  <u>United States v. Duncan</u>, 919 F.2d 981, 988 (5th Cir. 1990).

Courts allow the charts and summaries when the evidence involves numerous exhibits which are difficult to examine in court without the charts or the charts are helpful to the jury. <u>United States v. Stephens</u>, 779 F.2d at 239; <u>United States v. Scales</u>, 594 F.2d 558, 564 (6th Cir. 1979).  Such is the situation in this case.  Among the summaries that the government may seek to admit are Goward's results of his forensic review of the computer hard drives, and the review of the floppy disks by Agent Godwin.  As identified and captured by CFS Goward, the forensic report is nothing more than a summary of the raw data removed from the Seagate and Maxtor hard drives.  In the form that it will be presented, the data will simply be a visual manifestation of the digital data that was stored on the defendant's computer. <u>See</u> <u>United States v. Lemire</u>, 720 F.2d 1327, 1349 (D.C. Cir. 1983); <u>United States v. Pollack</u>, 417 F.2d 240, 241 (5th Cir. 1969).  It is anticipated that some of this summary evidence will

come from attachments to Goward's forensic report, and will include some images, as well as textual data.

Indeed, because it is the evidence on the hard drive, referring to it as a summary is perhaps a misnomer and the report should only be considered a summary to the extent that the raw data has been organized by CFS Goward into a form or structure where it can be easily understood and accessed.  Allowing presentation to the Court of the data contained on that drive is simply the only way to present the evidence of the defendant's crimes.

**H.   <u>Defendant's Statements</u>**

Admissions by a party-opponent are treated as non-hearsay under Rule 801(d)(2)(A) and are thus admissible for their truth. Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; the defendant may not elicit his own prior statements.  Fed. R. Evid. 801(d)(2)(A); <u>United States v. Fernandez</u>, 839 F.2d 639 (9th Cir. 1988).  If the government chooses not to introduce statements made by the defendant, the defendant may not introduce those statements as they would be hearsay because they would not be offered by a party-opponent.

At the time of the seizure of defendant's computers on January 18, 2006, Redding police interviewed the defendant.  A record of that interview was made by Police Corporal Alan Mellon. In that statement, the defendant told the Redding Police Investigators that the floppy disks belonged to him and were created by him.  He also said the computer that contained the

Maxtor hard drive and the computer that contained the Seagate hard drive, were his.  He also said he searched for and downloaded images of boys from the internet and that he kept what he wanted and deleted what he didn't want.  The defendant also later wrote a letter to police.  The government likely will not offer evidence of his letter.

### I.   Prior Inconsistent Statements

In any trial, there may be witnesses who testify who have given prior inconsistent statements.  Any prior statements not made under oath will be admissible only as impeachment evidence.

### J.   Cross-Examination of Defendant's Character Witnesses

In the event the defendant testifies, he may call character witnesses.  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

On cross-examination of the defendant's character witnesses, the government may inquire into specific instances of the defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 479 (1948).  However, the defendant may not, on direct examination, ask about specific instances of conduct.  Fed. R. Evid. 405(a).

### K.   Expert Testimony

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702[23]; <u>United States v. Espinoza,</u> 827 F.2d 604, 612 (9th Cir. 1987).  The admission of expert testimony is a matter within the sound discretion of the trial court.  <u>United Stated v. Kinsey</u>, 843 F.2d 383, 387-89 (9th Cir. 1988); <u>United States v. Anderson,</u> 813 F.2d 1450, 1458 (9th Cir. 1987).

Pursuant to Federal Rule of Evidence 702, the government will seek to qualify both Special Agents Li and Computer Forensic Specialist Matthew Goward as experts in the field of computer forensic examinations.  Both have extensive training and experience with computer forensics, to include forensic examinations of computers in child pornography investigations.  In addition to describing the methodology of his work as well as the results there of, CFS Goward will also testify about various matters concerning the computer programs used and the technology involved in the computer transmissions.[24]

Expert testimony is also anticipated from Dr. Angela Rosas on the issue of the age of unidentified victims depicted in the images and videos.  Each expert has extensive training and education in their field of expertise and will discuss the

---

[23] Fed. R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

[24] The Government's Notice of Expert Testimony was filed on September 28, 2009.

methodology of their work and results.

**L.   Reciprocal Discovery**

To date, the government has provided several hundred pages of discovery to the defense.  The government has requested reciprocal discovery, but has received only the report prepared by defendant's forensic examiner and the examiner's experience and work history.  Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the Court should exclude it pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

**M.   Courtroom Security**

The government is not aware of any extraordinary security risk which would necessitate the taking of any special precautions.

**N.   Presentation of Witnesses**

It is possible that the government may have to call certain witnesses out of order, or re-call witnesses to testify to various events to maintain an orderly presentation.  This should provide for an efficient presentation of the evidence and assist the jury, the Court, and the defendant in understanding the evidence being presented.  Unless otherwise agreed upon by the parties, the government asks that upon the conclusion of each witness's testimony that they not be excused and that they remain subject to recall.

**O.   Forfeiture Allegation**

The indictment contains a provision for the criminal

forfeiture of any and all interest the defendant has in the computer hard drives and floppy disks used for receiving and possessing the images of child pornography at issue in this case.

Rule 32.2 of the Federal Rules of Criminal Procedure has replaced Rule 31(e) and has codified various forfeiture concepts, and under Rule 32.2(b) the Court is required to bifurcate forfeiture from the guilt/innocence phase. <u>See</u> Fed. R. Crim. P. 32.2(b)(1). Where this trial, however, is a court trial, bifurcation is not required. Criminal forfeiture is a part of the sentence; it is not a substantive element of the offense. <u>Libretti v. United States</u>, 516 U.S. 29, 38-39 (1995). Because it is part of sentencing, and fact finding at sentencing is generally established by a preponderance of the evidence, the preponderance standard applies to criminal forfeiture. <u>See</u> <u>United States v. Garcia-Guizar</u>, 160 F.3d 511, 518 (9th Cir. 1998).

The sole issue for the court to determine is whether the government has established the requisite nexus between the offense of conviction and the property it seeks to forfeit under the pertinent forfeiture statute - in this case, 18 U.S.C. sections 2252(a)(1), (2) or (4)(B). <u>See</u> Fed. R. Crim. P. 32.2(b). Because the government is limiting the number of floppy disks and images it intends to offer during the guilt phase of the trial, the government will not be tendering all of the images and floppy disks it believes contain sexually explicit images. Should the court find the defendant guilty of the possession charge alleged in Count One, the government will offer all 539

floppy disks to the court for purposes of their forfeiture.

The defendant has waived his right to jury trial on the forfeiture issue.  Fed. R. Crim. P. 23(a).

## VII. <u>WITNESS EXCLUSION & CASE AGENT DESIGNATION</u>

The government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615.  The government, however, requests that SA Ross Godwin be designated as the case agent and be exempt from the exclusion order, pursuant to Fed. R. Evid. 615.  <u>See also</u> <u>United States v. Little</u>, 753 F.2d 1420, 1441 (9th Cir. 1985).  The government also requests that Computer Forensic Specialist Goward be excepted from any sequestration order as his expert knowledge qualifies him as essential to counsel in understanding the case properly. <u>See</u>, <u>e.g.</u>, <u>United States v. Connors</u>, 894 F.2d 987 (8th Cir. 1990) (presence in court was essential to expert's testimony); <u>United States v. Seschillie</u>, 310 F.3d 1208 (9th Cir. 2002).

## VIII.  <u>GOVERNMENT WITNESSES</u>

The government intends to call the following witnesses: William (Bill) Cibart, defendant's nephew; Alan Mellon and William Schueller, both of the Redding Police Department; ICE Special Agent Ross Godwin; ICE Special Agent Da Shun Li; CEOS Computer Forensic Specialist Matthew Goward; Investigator Paul Cales; FBI Special Agent Neil Wheeler; Records Custodian from Giganews.com; Lance Loper, Human Resource Specialist, U.S. Postal

///

///

Service.[25]  The government respectfully requests that it be allowed to call any additional witnesses as may be necessary during the course of the trial.

## IX.  <u>CONCLUSION</u>

The foregoing is a summary of points the government anticipates may arise at trial.  Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit further briefing as may be necessary.

DATED: January 8, 2010                Respectfully submitted,
                                      BENJAMIN D. WAGNER
                                      United States Attorney


                                By:   <u>/s/ Laurel D. White</u>
                                      LAUREL D. WHITE
                                      Assistant U.S. Attorney
                                      MI YUNG PARK
                                      Trial Attorney

---

[25] The government had planned to call Brian Halford, Records Custodian from Snowcrest.com; Rudy Cobb, Records Custodian from Seagate/Maxtor; Yosuke Tsuchida, Records Custodian from Memorex/Imation and possibly Dr. Nicole Spaun of the FBI.  In light of the stipulations of fact, however, these witnesses will likely not be needed.

**Government's Trial Brief  1-20-10**     72